EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FLORENCIO ALVAREZ, acusado y apelante. EL MISMO, v. EL MISMO.

Nos. 5150 y 5151.—*Sometidos:* Abril 20, 1934. *Resueltos:* Julio 11, 1934.

162

*Celestino Iriarte* y *F. Fernández Cuyar,* abogados del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Florencio Alvarez fué acusado de haber cometido el delito de incesto con cada una de sus dos hijas, Angélica y Basilisa. Se presentaron dos acusaciones independientes, pero los casos fueron juzgados conjuntamente en la corte inferior y oídos también conjuntamente ante este tribunal. El caso fué visto sin jurado, y la corte declaró al acusado culpable en ambos casos.

Las dos hijas ocuparon la silla testifical y declararon en detalle respecto a los actos cometidos por el padre. Cada una de ellas, según su testimonio, presenció el acto carnal realizado por el padre con su hermana. Ellas dormían en la misma cama. Algún tiempo después de haber tenido lugar los supuestos actos, la hermana mayor, Angélica, abandonó a su padre y se fué a la casa de su abuelo, donde vivían dos de sus tías. Ella no hizo inmediatamente mención de lo que su padre le había hecho. Durante algún tiempo le cesaron los períodos menstruales, de forma que una de sus tías la llevó nuevamente a la casa de su padre y le entregó la hija a su madrastra. Esta última llevó a la joven a un médico,

quien la examinó. Entonces la joven volvió a la casa de su abuelo. Fué poco después de su llegada que una de las tías le examinó el vientre y encontró que estaba encinta, y entonces, a instancias de una de éstas, ella contó lo ocurrido y dijo: "Ay, madrina, el que me ha hecho el daño a mí es papá, mi padre." Entonces una de las tías, o ambas, al continuar Angélica su explicación fué a la casa del padre y se trajo a la otra hija a su propia casa, y ésta también entonces informó a sus tías de lo sucedido. Esta última comunicación fué hecha unos tres meses después de los supuestos sucesos.

Ambas tías declararon durante el juicio respecto a las manifestaciones héchasles por las dos jóvenes y la defensa principal en apelación es que la cuestión de corroboración o *res gestae* era demasiado remota. La teoría en parte fué que cada una de las muchachas, o ambas, debieron haberse querellado antes a alguien y que el testimonio de las tías era inadmisible. De los autos no se desprende claramente la edad de ninguna de las perjudicadas. La más joven declaró en el juicio que ella tenía 14 años de edad, y los hechos habían ocurrido como un año antes.

En primer lugar, surge de autos que cada una de las dos jóvenes corroboró fuertemente a la otra. En otras palabras, cada una de ellas declaró respecto al concúbito tenido por su padre con su hermana. Bajo estos hechos, no se necesitaba ulterior corroboración, y podría suceder que la presentación del testimonio de las tías relativo a lo que las jóvenes les habían manifestado pudiera considerarse como acumulativo o no perjudicial, mas no basamos nuestra decisión en este fundamento.

Ora consideremos la cuestión desde el punto de vista de *res gestae* o de corroboración, los hechos salientes de este caso demuestran que Angélica no se querelló por temor, respeto a su padre o debido a reserva natural, por lo menos hasta que se vió precisada a hacerlo así por las circunstancias de su preñez y por la insistencia de sus tías. La otra hija aparentemente se quejó en la primera oportunidad razonable

que tuvo. Angélica evidentemente no quería querellarse contra su padre.

Un caso de incesto de esta índole en que el padre está envuelto presenta un aspecto algo distinto a casos corrientes de violación, bajo los cuales han sido acopiadas la mayoría de las autoridades citadas por el apelante y por el fiscal. Algunas de las autoridades pertinentes del fiscal son, Wigmore sobre Evidencia, volumen 2, página 654, sección 1134; *Pueblo* v. *Arenas,* 39 D.P.R. 22; *Pueblo* v. *Blanco,* 40 D.P.R. 130. Para nosotros es claro que los hechos de este caso de incesto se sucedieron en su secuencia natural y que la declaración hecha por Angélica a sus tías al ser íntimamente interrogada por una de ellas, estaba en orden. Antes de eso Angélica creyó que sus períodos menstruales se tardaban y así también lo creyeron sus tías, quienes trataron de darle algunas medicinas para hacer que éstos volvieran a su curso normal. Estamos de acuerdo con la cita de 3 Wigmore sobre Evidencia, página 738, hecha en el caso de El Pueblo v. Arenas, supra, como sigue:

"Debe observarse que las manifestaciones no tienen que ser estrictamente contemporáneas con la causa excitante; pueden ser subsiguientes a ella, siempre que no haya habido tiempo para que la influencia excitante pierda su influjo y sea disipada. La falacia, anteriormente tenida en cuenta por algunas cortes, de que la manifestación debe ser estrictamente contemporánea (*Post,* sec. 1756) debe su origen a la aplicación errónea de la doctrina del acto verbal. . ."

La "influencia excitante" a que Wigmore hace referencia no había perdido su influjo en este caso.

El apelante también sostiene que la prueba no era suficiente para condenar al acusado en este caso. Es cierto que el acusado negó haber tenido relaciones sexuales con cualquiera de las hijas y que indicó, al igual que lo hizo su esposa, que Angélica había llevado relaciones amorosas con un joven. La esposa del acusado también declaró al efecto de que era imposible que él abandonara la habitación, según

había manifestado Angélica, sin ser oído por la testigo. Convenimos con el fiscal en que la corte tuvo amplia prueba ante sí para condenar al acusado y que no estaba obligada a creer el testimonio ofrecido en sentido contrario.

*Debe confirmarse la sentencia apelada.*