EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
RAFAEL FUENTES, acusado y apelante.

Núm. 10265.—*Sometido:* Enero 18, 1944. *Resuelto:* Febrero 4, 1944.

*F. García Quiñones,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogado de El Pueblo, apelado.

EL JUEZ PRESIDENTE INTERINO SEÑOR TRAVIESO emitió la opinión del tribunal.

El apelante fué convicto de un delito de violación y condenado a la pena de seis años de presidio. Basa su recurso de apelación en diez señalamientos de error, los cuales consideraremos en el mismo orden en que aparecen formulados en el alegato.

1. En el primero se alega que la corte inferior erró al declarar sin lugar la excepción perentoria, basada en la alegación de que en la acusación se imputa la comisión de dos delitos distintos, el de "ataque para cometer violación" y el de "violación".

No existe el alegado error. La acusación, en lo que es pertinente, lee así:

". . . ilegal, voluntaria, maliciosa y criminalmente, atacó a la niña menor de catorce años de edad, nombrada. . . con la intención de violarla, y valiéndose de la fuerza y de la violencia, realizó con ella un acto de *sexual intercourse* o concúbito sexual, sin el consentimiento y contra la voluntad de la mencionada niña. . . , quien allí y entonces no era la esposa del acusado."

El ataque para cometer violación está necesariamente comprendido dentro del delito de violación. No es posible imputar a una persona la comisión de un delito de violación, cuando el acto ha sido realizado por medio de fuerza y violencia, sin imputarle al mismo tiempo que atacó a la ofendida con la intención de violarla. Del mismo modo, cuando en una acusación por asesinato se dice que el acusado atacó a su víctima con la intención premeditada de privarle de la vida y que le hizo un disparo de revólver que le ocasionó la muerte, no se está imputando al acusado la comisión de dos

delitos y sí solamente el de asesinato. Y esto es así porque el atentado para cometer un delito cualquiera se funde con el delito que se intentó cometer tan pronto como éste ha quedado consumado. No hay duplicidad en la acusación en este caso. *Pueblo* v. *Vega,* 20 D.P.R. 298, 300; *People* v. *Tyler,* 35 Cal. 553; *De Beny* v. *State,* 99 Tenn. 208; *People* v. *Pia,* 14 C. A. 131, 111 Pac. 105.

■ 2–3. Estos dos señalamientos envuelven una sola cuestión, o sea, si la corte inferior erró al admitir como parte del *res gestae* la declaración de la madre de la niña ofendida. Para poder resolverla se hace necesario que hagamos un resumen de lo declarado por la niña y por la madre.

En la fecha en que fué ultrajada, la niña tenía trece años de edad y vivía con sus padres y hermanitos en una habitación de una casa en el barrio "La Perla", en San Juan. En una habitación contigua, separada por un tabique, vivía el acusado, a quien la niña conocía *de vista.* Declaró la niña que mientras ella se encontraba bañándose, estando su mamá y hermanito en el patio, el acusado penetró en su habitación. Ella trató de gritar, pero el acusado le tapó la boca y la llevó por la fuerza a su habitación y la tiró en la cama, amenazándola para que no gritara, diciéndole que tenía un puñal. Después de describir con lujo de detalles el acto realizado sobre su persona por el acusado, continuó la niña declarando que el acusado la amenazó diciéndole que sería peor para ella si le decía algo a sus padres; que el día de autos fué la primera vez que el acusado le habló a ella; que el acusado vivía en su habitación con una señora que él tenía, pero que ella se disgustó con él y se fué; que después del suceso ella volvió a ver al acusado de lejos y él le hacía señas para que se callara; que no dijo nada a su mamá hasta seis días después porque le tenía miedo al acusado, pues éste la amenazaba; que fué su mamá la primera persona a quien contó lo que le había ocurrido.

La madre de la perjudicada declaró que el día del suceso vió al acusado asomado a la ventana de su habitación, mientras ella se encontraba en el patio, a donde había ido en lo que su hija se bañaba; que cuando regresó a la casa encontró a la hija sentada en un rincón, leyendo y mirando unos cuadros; que ese día y los siguientes la vió triste, pero no la vió llorar; que el 6 de julio mojó una ropa de la niña y al encontrarla manchada de sangre le preguntó qué le había sucedido y ella entonces le contó. La testigó relató lo que le había contado su hija, en los mismos términos en que la niña declaró en el acto del juicio, y añadió que su hija después de contárselo todo le encargó que no dijese nada porque el acusado la había amenazado con un puñal.

El Dr. Antonio Martínez Alvarez declaró en cuanto al estado en que encontró los órganos sexuales de la niña en el examen por él practicado el día 8 de julio; que la niña estaba desflorada y que la desfloración tenía más o menos como diez días, encontrándose en período de cicatrización. La edad de la niña fué establecida por la certificación de su nacimiento y por la declaración de la madre.

Independientemente del relato hecho por la niña a la madre, cinco días después del suceso, la declaración de la madre y la del médico son, a nuestro juicio, suficientes para corroborar el testimonio de la ofendida en cuanto al ataque criminal de que fué víctima.

La regla que permite la admisión de la queja de la ofendida, en corroboración de su testimonio o como parte del *res gestae,* no es una regla inflexible. Su aplicación con mayor o menor rigidez depende de las circunstancias especiales de cada caso. Cuando, como en el caso de autos, la ofendida es una niña de solamente trece años de edad, legalmente incapaz para consentir el acto carnal realizado sobre su persona, y su silencio durante los cinco días siguientes es la consecuencia directa del miedo producido en su ánimo por las amenazas del autor del ultraje, el relato hecho por ella a la

madre al enterarse ésta por el descubrimiento de las manchas de sangre que algo anormal le había ocurrido a la niña, es legalmente admisible. 44 Am. Jur., *Rape,* sec. 84, pág. 955, nota 16. Que la niña guardó silencio por temor a las amenazas que en el acto de la violación y posteriormente le hiciera el acusado, se desprende de la súplica que hizo ella a la madre, después de relatarle lo que le ha ocurrido, para que no dijera nada a nadie pues el acusado la ha amenazado con un puñal.

 4-6. El cuarto, el quinto y el sexto señalamientos están relacionados con el incidente que vamos a exponer y resolver.

Terminada la presentación de evidencia por ambas partes, solicitó la defensa que se hiciera retirar al jurado. Excluído éste, la defensa solicitó la absolución perentoria del acusado, por el fundamento de que no se había presentado prueba alguna de que la niña ultrajada no fuera la esposa del acusado. La corte declaró con lugar la moción "en el sentido de que se instruya al jurado que la prueba no es suficiente de acuerdo con la ley". Entonces el Fiscal, alegando que la propia defensa había reabierto el caso al hacer su moción después de haber anunciado que había terminado su prueba y que estaba listo para informar al jurado, pidió a la corte que le permitiera presentar evidencia para probar que la joven ofendida no era esposa del acusado. Se opuso la defensa, la corte concedió el permiso y la defensa anotó su excepción.

Llamada a declarar de nuevo la ofendida, a preguntas del fiscal contestó que conoce al acusado y que éste no es esposo suyo. La defensa presentó entonces una moción para que se declarase un *"mistrial",* la que fué denegada, anotándose una excepción.

Somos de opinión que la corte inferior no abusó de su discreción al permitir que la niña agraviada declarase que el acusado no era su esposo. Si algún error cometió fué el

de declarar que la prueba originalmente presentada por el fiscal era insuficiente en cuanto a ese extremo de la acusación.

La inexistencia de la relación marital entre la agraviada y el acusado, siendo como es una proposición negativa, puede ser establecida por prueba indirecta o circunstancial. La mejor prueba de que una mujer es la esposa de un hombre es el certificado de matrimonio expedido por autoridad competente. Para probar que no lo es basta la declaración de la mujer, si ésta es creída por el jurado. *Pueblo* v. *Arenas,* 39 D.P.R. 16. En su primera declaración la niña agraviada dijo que conocía al acusado "de vista"; que el día del suceso fué la primera vez que el acusado le habló a ella y que antes de ese día él nunca la había molestado; que ella vivía con sus padres y hermanitos y continuó viviendo con ellos después del suceso; y que el acusado vivía en su habitación con su esposa, la cual se había ido en esos días porque habían peleado. Ese testimonio tiene a nuestro juicio mayor valor probatorio que la simple declaración posterior de que el acusado no era su esposo. A todo esto podríamos agregar, que siendo la ofendida una niña de trece años de edad, legalmente incapacitada para contraer matrimonio, debe presumirse que no lo ha contraído; y, además, que aun cuando se probara que lo había contraído, ese matrimonio sería nulo. Artículos 68 a 70 del Código Civil.

La declaración adicional de la ofendida fué en realidad prueba acumulativa, pues el hecho de que la niña no era la esposa del acusado estaba ya suficientemente establecido. El error, si alguno fué cometido, en nada pudo perjudicar al acusado.

■ 7–10. Los cuatro señalamientos restantes están relacionados con las instrucciones dadas al jurado.

Se queja el apelante de que la corte al instruir al jurado sobre el testimonio de la niña hizo un análisis de dicho tes-

timonio de carácter argumentativo. Alega además, que la corte dió lugar a que el jurado creyese que con el testimonio de la perjudicada bastaba para condenar al acusado.

Hemos examinado las instrucciones. No encontramos en ellas comentarios o argumentos sobre la evidencia presentada que puedan ser considerados como perjudiciales a los derechos del acusado o que sostengan la alegación de que el juez demostrara pasión o prejuicio en contra del acusado. El resumen que de toda la prueba hizo la corte se ajusta a lo que aparece en la transcripción de evidencia. Y en cuanto a la segunda parte de este señalamiento, encontramos que la instrucción dada por la corte al efecto de que "en procesos por este delito el acusado no puede ser declarado culpable con la sola declaración o testimonio de la mujer agraviada, a menos que su declaración se corrobore con alguna otra prueba", es suficiente para demostrar que el alegado error no fué cometido.

■ En las instrucciones sobre la regla del *res gestae* no encontramos nada que se aparte de las normas establecidas por la jurisprudencia sobre la materia. No erró la corte al instruir al jurado que no es necesario en todos los casos que las manifestaciones de la ofendida hayan sido hechas inmediatamente; y que cuando la ofendida ha tardado en relatar lo ocurrido por temor a las amenazas que le ha hecho el ofensor, el tiempo transcurrido no impide que la declaración sea admisible. *Pueblo* v. *Arenas,* 39 D.P.R. 16; *Pueblo* v. *Blanco,* 40 D.P.R. 130, y *Pueblo* v. *Vázquez,* 40 D.P.R. 258.

*Siendo la prueba de cargo suficiente para sostener el veredicto del jurado y no habiéndose cometido error alguno perjudicial a los derechos del apelante, la sentencia recurrida debe ser confirmada.*

El Juez Asociado Sr. Snyder no intervino.