El Pueblo de Puerto Rico, demandante y apelado, *v.* Benito González Alers, acusado y apelante.

Núm. 11137.—*Sometido:* Marzo 1, 1946. *Resuelto:* Mayo 29, 1946.

*José Veray, Jr.,* abogado del apelante; *Hon. Procurador General E. Campos del Toro, Luis Negrón Fernández, Primer Procurador General Auxiliar,* y *J. Correa Suárez,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Apela el acusado de la sentencia de un año de presidio que le impuso la Corte de Distrito de Aguadilla al ser con-

victo por un jurado del infame delito contra natura. En este recurso alega que la corte inferior erró al permitir declarar a la testigo Bienvenida Bonet Ríos, madre del niño perjudicado Casiano Bonet de cinco años y medio de edad, sobre manifestaciones que éste le hizo y que tendían a inculpar al acusado, cuando ya dicho niño había fallecido en la fecha de la celebración del juicio; al permitir a dicha testigo declarar con el fin de cualificar al niño en cuanto a su capacidad y grado de inteligencia para así poder admitir su declaración como parte del *res gestae* y al declarar sin lugar su moción de *nonsuit* y declarar culpable al acusado con prueba de referencia pues aun en la hipótesis de que fuera admisible como parte del *res gestae* es insuficiente para condenar en ausencia de algún hecho esencial establecido por otra prueba. Los tres señalamientos envuelven una sola cuestión primordial, es decir, si la prueba de cargo, única presentada en el juicio, es suficiente para sostener el veredicto. Veamos.

El Dr. Luis A. Sánchez declaró que examinó al niño Casiano Bonet y encontró que tenía varios desgarres en la región del ano; que dichos desgarres pudieron ser causados por cualquier cuerpo extraño, especificando varios.

Bienvenida Bonet Ríos, madre del niño, declaró que éste había fallecido varios meses antes del día en que se celebró el juicio; que su hijo nació el 4 de enero de 1938 (los hechos ocurrieron, según la acusación, el 25 de octubre de 1943, de manera que el niño tenía cinco años nueve meses de edad); que ella vivió con su marido y sus hijos en el Barrio Guaniquilla de Aguada; que conocía al acusado por ser vecino suyo; que el día de los hechos, de cuatro a cinco de la tarde, su hijo Casiano estaba en la casa del acusado jugando con otros niños; que vió cuando el acusado mandó a su hijo a pedirle permiso para irse a bañar con él a la quebrada y ella accedió confiada por ser el acusado vecino; que vió cuando salieron para la quebrada y el acusado impidió que otro niño que quería ir fuera con ellos; que a la hora y pico

llegó su hijo a su casa llorando, se quitó la ropa y se acostó; que ella le preguntó que qué le pasaba y le dijo que el acusado lo había cogido y lo había tumbado y dicho que se quedara callado, que no dijera nada porque ella podía pegarle, que él le iba a cortar un pedazo de caña y le dió un centavo; que lo había tumbado sobre un cacharro y entonces el acusado le había colocado su miembro por el ano; que las ropas de su hijo estaban con sangre y tenía el ano partido con magulladuras, desbaratado; que entonces ella llamó a la madre del acusado y el niño repitió lo que había sucedido pero el acusado negó y dijo que el niño se había caído pero que el niño le sostuvo que le había hecho esas cosas malas; que al día siguiente su marido llevó el niño al hospital donde el Dr. Sánchez y luego todos fueron a la fiscalía y le dieron cuenta de lo ocurrido al fiscal. ¿Es suficiente esta prueba?

La declaración del médico estableció el hecho de que alguien había cometido el delito de contra natura en la persona del niño.

La de la madre tiene dos aspectos. La primera, directa, en cuanto a los hechos que ella presenció, a saber: vió a su hijo jugando en casa del acusado y cuando éste lo envió a pedirle permiso para ir a bañarse a la quebrada y cuando salieron juntos y el acusado impidió que otro niño los acompañara. También lo es el hecho de haber visto las condiciones físicas de su hijo y de su ropa inmediatamente después de haber regresado a su casa y haber presenciado cuando su hijo le sostuvo al acusado que había hecho cosas malas con él, lo que negó el acusado diciendo que se había caído.

Esta prueba era claramente admisible. Aunque circunstancial, tendía a conectar al acusado con la comisión del delito. ¿Era admisible el resto de la declaración de la madre en cuanto a lo que le dijo su hijo? Somos de opinión que, bajo la doctrina del *res gestae,* era admisible.

Esas manifestaciones fueron hechas inmediatamente después de regresar el niño de la quebrada, cuando aún estaba bajo los efectos del dolor que sufría por el acto que se había cometido con él y bajo el temor de lo que podía sucederle, según le había dicho el acusado, si decía algo. El hecho de que la madre tuviera que preguntarle al niño qué le pasaba para que le relatara el acto criminal que se había cometido con él, no le resta espontaneidad a sus manifestaciones si tomamos en consideración su edad y el temor que el acusado había infundido en él. En el caso de *Pueblo* v. *Fuentes,* 63 D.P.R. 44, resolvimos que la queja dada por la perjudicada a su madre, a preguntas de ésta, cinco días después de consumado el delito era admisible como corroboración o como parte del *res gestae* por haber estado la perjudicada bajo el temor de las amenazas de su violador. Dijimos entonces, y repetimos ahora, que la aplicación de la regla que permite la admisión de esta clase de prueba con mayor o menor rigidez, depende de las circunstancias especiales de cada caso. A su vez lo dicho en el caso de *Fuentes* no fué sino una repetición concisa del principio expuesto por Wigmore, que citamos en el caso de *Pueblo* v. *Calventy,* 34 D.P.R. 390, 2, 3, al efecto de que: "Debe observarse que las manifestaciones *no tienen que ser estrictamente contemporáneas* con la causa excitante; pueden ser subsiguientes a ella, siempre que no haya habido tiempo para que la influencia excitante pierda su influjo y sea disipada. . . . Además, no puede haber *ningún límite de tiempo definido y fijo.* Cada caso debe depender de sus propias circunstancias." Wigmore *on Evidence,* Vol. VI, pág. 142, sec. 1750.

En dicho caso de *Calventy* citamos otro párrafo del mismo autor en el curso del cual se dice que: "Hay una pérdida lamentable de tiempo por parte de las cortes superiores en tratar aquí bien de establecer o respetar precedentes. En vez de esforzarse débilmente por lo imposible deben decisivamente insistir en que todo caso sea tratado por sus pro-

pias circunstancias. Debieran, si pueden hacerlo, levantarse perceptiblemente aun a la mayor altura de dejar la aplicación del principio absolutamente a la determinación de la corte sentenciadora. . . . '' A esta recomendación esta corte, por su Juez Asociado Sr. Hutchison, contestó diciendo:

"No tenemos que especular respecto a si sería o no enteramente conveniente, o prematuro, o peligroso ahora y en esta jurisdicción el pretender hacer un vuelo en los Campos Elíseos por la zona altitudinal del penúltimo párrafo arriba citado en último término. Por ahora será bastante con decir que a menos que y hasta tanto un apelante pueda demostrar una abierta desatención o clara desviación del principio envuelto, no estaremos dispuestos a intervenir con el ejercicio de la sana discreción del juez sentenciador."

Este mismo principio lo expresa Underhill aduciendo: "Si las manifestaciones pueden ser admitidas como *res gestae,* aunque separadas por el tiempo o distancia de la transacción principal, depende de las circunstancias de cada caso. Si la evidencia es admisible como parte del *res gestae* descansa grandemente en la discreción judicial." Underhill, *Criminal Evidence,* pág. 351, Sec. 191 (4ta. ed.).[1]

El de autos es un caso que presenta las circunstancias especiales que, a nuestro juicio, requiere la aplicación de la regla con menor rigidez. Presenta el hecho de que el niño, por haber muerto antes del día del juicio, no pudo ser utilizado como testigo aceptando que hubiera podido ser cualificado como tal. Pero es que, aun cuando no hubiera podido serlo, la declaración de la madre era igualmente admisible. Bajo la regla del *res gestae* " . . . . el hecho de que una persona sea incompetente para declarar como testigo no afecta la admisibilidad en evidencia de sus declaraciones. Así pues, manifestaciones de niños, descualificados como testigos competentes por razón de su infancia, si dichas manifestaciones son parte del *res gestae,* han sido admitidas si dichos niños han sido los perjudicados por el daño o acto o

---

[1] Al mismo efecto, véase el caso de *Pueblo* v. *Márquez,* 64 D.P.R. 371, 80.

meramente estaban presentes en el momento del accidente o de la comisión del crimen." 1 Jones *on Evidence,* Sec. 355 *a;* Underhill, ob. cit., pág. 363, Sec. 197; Wigmore, ob. cit., pág. 175, Sec. 1761, quien expresa la regla en casos de violación, en esta forma: "Cuando la perjudicada es una niña demasiado joven para ser testigo, la manifestación debe no obstante ser admitida; porque, aunque en general un testigo de referencia no debe dejar de tener las cualificaciones de un testigo corriente . . ., sin embargo la peculiar naturaleza de la presente excepción . . . hace que este principio sea sustancialmente inaplicable a niños . . ." Y esto es así, porque en dicha prueba no es el testigo el que habla sino la transacción expresándose ella misma. *Powell* v. *Gallivan,* 118 A. 769; *Kenney* v. *State,* 79 S. W. 817. En este último caso se resolvió y copiamos del sumario, que "En un proceso de violación de una niña de tres años y medio de edad y de inteligencia insuficiente para declarar como testigo, su incompetencia como testigo no hacía evidencia inadmisible las quejas hechas por ella tan poco después de la ofensa que constituían *res gestae."*

Los casos de *Soto* v. *Territory,* 94 Pac. 1104, y *Keefe* v. *State,* 72 P.2d 425, ambos por delitos contra natura, y resueltos por la Corte Suprema de Arizona, revelan la distinción que debe hacerse en la aplicación de la regla que discutimos. En el primero los hechos son muy similares a los del caso de autos. En el juicio la madre declaró que mandó a su hijo de cuatro años de edad a la tienda a las once de la mañana; que cuando volvió a las doce y media llegó llorando y muy pálido; que lo examinó y encontró su *rectum* lacerado y sangrando. Al preguntarle el fiscal qué le había dicho el niño, la defensa objetó la pregunta pero la corte la admitió y la madre contestó exponiendo lo que le había dicho. Hubo otros testigos que declararon en cuanto a que vieron al niño, poco después de llegar a su casa, llorando, excitado y quejándose y también describieron su condición física. La

única cuestión planteada en apelación fué la admisión como evidencia de la declaración de la madre relatando las manifestaciones de su hijo en cuanto a los detalles del delito. Después de citar varias autoridades para demostrar que las manifestaciones no tenían que ser estrictamente contemporáneas con la transacción principal, la corte se expresó así, a la página 1105:

"Aplicando esta doctrina al caso de autos, no podemos decir que la corte sentenciadora erró al admitir el testimonio de la madre del niño en cuanto a sus manifestaciones de lo que había ocurrido entre él y el acusado. Cuando consideramos su juventud, su condición física, el grado de excitación y nerviosidad que estaba sufriendo cuando volvió a su casa y cuando hizo las manifestaciones y todas las circunstancias concurrentes demostradas por la prueba, creemos que estaba dentro de la sana discreción de la corte sentenciadora permitir que este testimonio fuera al jurado."

Por el contrario, en el caso de *Keefe,* supra, aun cuando se ratificó la doctrina expuesta en el de *Soto,* se diferenció por el hecho de que las manifestaciones de la niña perjudicada, de cuatro años de edad, y las de su hermano de seis, fueron hechas a sus padres un sábado y se refirieron a un hecho ocurrido el lunes anterior y no porque estuvieran bajo la excitación o nerviosidad del mismo, sino como una excusa dada a sus padres cuando la madre los sorprendió a ellos realizando actos inmorales. Dijo la Corte a la página 427:

"Examinemos el testimonio y veamos si puede razonablemente presumirse que las manifestaciones de los niños fueron hechas como una consecuencia espontánea y sincera del *shock* de un acto cometido el lunes anterior. Estamos constreñidos a sostener que tal conclusión no es razonable ni en consonancia con la experiencia ordinaria de la humanidad. Lo que motivó las manifestaciones obviamente no fué un acto que ocurrió el lunes anterior sino el *shock* causado en los niños al ser sorprendidos en *flagrante delicto,* y la manifestación de ellos fué obviamente un intento de justificar su conducta en ese momento dando como excusa la conducta anterior del acusado, más bien que la excitación nerviosa causada por cualquier actuación del

acusado. El caso de *Soto* v. *Territory,* 12 Ariz. 36, 94 P. 1104, citado por ambas partes, ilustra claramente en qué casos las manifestaciones de un niño son admisibles como exclamaciones espontáneas y cuándo no lo son. . . .''

En el caso de autos las manifestaciones del niño fueron hechas a la madre inmediatamente después de volver a su casa, cuando aún estaba bajo la excitación y nerviosidad causada por el *shock* que había sufrido como consecuencia del despreciable y vergonzoco acto cometido en su persona y cuando aún estaba bajo el temor que en él había infundido el acusado del castigo que podía recibir si le decía algo a su madre. Las manifestaciones del niño fueron contemporáneas con la comisión del delito pues guardan una "relación causal, lógica y psicológica, con los hechos primarios envueltos en el caso." *State* v. *Lasecki,* 106 N. E. 660, 1 (sumario).

Si a las manifestaciones del niño unimos la prueba en cuanto al estado de su ropa y su cuerpo lastimado, según los describió su madre y además el hecho de haber ella presenciado cuando su hijo, poco antes, se dirigió hacia la quebrada con el acusado, a petición de éste, forzoso es concluir que no erró la corte al admitir la declaración de la madre y al declarar sin lugar la moción de *nonsuit* de la defensa.

Si en algo podría decirse que erró la corte inferior fué al imponer un año de presidio a un acusado convicto por un jurado de cometer un delito de esta naturaleza con un niño de cinco años de edad. Por lo general, respetamos la discreción judicial en la imposición de la pena en casos criminales, empero, eso no implica que dejemos de expresar nuestra desaprobación cuando el caso así lo amerite. La impuesta en el caso de autos, a nuestro juicio, es claramente inadecuada en relación a la gravedad del delito cometido.

*Eso no obstante, se confirma.*