EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MIGUEL OJEDA LÓPEZ, acusado y apelante.

Núm. 11382.—*Sometido:* Junio 4, 1946. *Resuelto:* Julio 15, 1946.

*Santos P. Amadeo* y *Gilberto Concepción de Gracia,* abogados del apelante; *Hon. Procurador General E. Campos Del Toro, Luis Negrón Fernández, Primer Procurador General Auxiliar,* y *J. Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Miguel Ojeda López fué acusado ante la Corte de Distrito de Bayamón de un delito de asesinato en primer grado, convicto por un jurado del delito imputado y sentenciado por la corte a reclusión perpetua. En este recurso alega que la corte inferior erró al no prestar atención a la objeción que el abogado del acusado hizo a ciertas manifestaciones hechas por el fiscal, en presencia del jurado, tratando de impugnar, sin fundamento alguno, al testigo del acusado, Lucas Ocasio, llamándole testigo de oficio y sostiene, además, que el veredicto del jurado es contrario a derecho y a la prueba.

El incidente que sirve de fundamento al primer señalamiento ocurrió mientras declaraba el testigo de la defensa, Lucas Ocasio, y en el curso de su contrainterrogatorio por el fiscal, en esta forma:

"P. ¿Y quién lo hirió a Cristino Nieves?

"R. Bueno, la lucha era entre los dos.

"P. Dígame ¿usted viene aquí cada rato de testigo?

"Defensa: Objeción, señor Juez, no es un delito venir de testigo a una corte.

"Hon. Fiscal: El fiscal está tratando de probar que éste es un individuo que no sabe nada de los hechos, que es un testigo de oficio.

"P. Yo lo he visto aquí unas cuantas veces.

"R. Yo aquí no he declarado. Yo tengo 68 años y no he declarado aquí.

"P. ¿Usted dice que ellos tuvieron una lucha?

"R. Como de cinco o seis minutos."

No hay duda alguna de que las palabras del fiscal, en ausencia de prueba presentada por él para sostener su aseveración, fueron altamente impropias. Debió la corte, así mismo, resolver la objeción que formuló la defensa y no lo hizo. Sin embargo, la defensa no insistió ni solicitó instrucción específica alguna al jurado sobre la cuestión.

Arguye el apelante que las manifestaciones del fiscal le fueron perjudiciales por referirse al único testigo de defensa. Cita en apoyo de su contención el caso de *Pueblo* v. *Marchand Paz*, 53 D.P.R. 671. Este caso puede diferenciarse fácilmente del de autos. En aquél el fiscal en su argumentación ante el jurado se refirió a hechos, que no habían sido objeto de prueba, que tendían a perjudicar al acusado. En el de autos somos de opinión que, ante la prueba de cargo, clara y robusta, consistente en declaraciones de testigos presenciales de los hechos, y además, la propia confesión del acusado unida a su declaración en el juicio, si bien las palabras del fiscal fueron impropias, el error cometido por la corte al no resolver la objeción planteada, no conlleva la revocación de la sentencia.

En *People* v. *Scott*, 141 P. 945, 948, el fiscal hizo cierta pregunta a un testigo que afectaba la reputación del acusado. El acusado objetó y la corte sostuvo al fiscal. Al verse el caso en apelación, la Corte Suprema de California dijo: "Puede ser que el fiscal debió abstenerse de hacer dicha pregunta al testigo Moran, pero, si sostuviéramos eso, en nuestra opinión, sería una injusticia echar a un lado el

veredicto por la sola formulación de esa pregunta. La prueba de la culpabilidad del acusado es tan fuerte y persuasiva que es increíble que el veredicto hubiera sido distinto aun cuando no hubiera ocurrido la conducta impropia del fiscal. . . . ''

La doctrina generalmente aceptada es al efecto de que manifestaciones impropias aisladas del fiscal no serán causa de revocación cuando el caso de El Pueblo descansa en prueba tan robusta y convincente que aun sin dichas manifestaciones el veredicto hubiéra sido el mismo. *Johnson* v. *United States,* 215 F. 679; *Fitter* v. *United States,* 258 F. 567, y *Berger* v. *United States,* 295 U. S. 78, 89. En este último caso, en el cual se revocó la sentencia debido a insistentes manifestaciones impropias por parte del fiscal ante el jurado, la corte dijo (pág. 89): ''Si el caso contra Berger hubiera sido fuerte, o, como han dicho algunas cortes, la prueba de su culpabilidad 'abrumadora' ('overwhelming') podría llegarse a una conclusión distinta. (Citas.) Además, no tenemos aquí un caso donde la conducta impropia del fiscal fuera leve o limitada a una sola ocasión, y sí uno en que tal conducta fué marcada y persistente, con un efecto acumulativo en el jurado que no puede pasarse por alto como de poca importancia. . . . ''

Como hemos dicho, la prueba de cargo en el caso de autos fué robusta y de carácter directo. Testigos presenciales declararon que estando Cristino Nieves en un cafetín, propiedad de Emilio Brañuelas, comprando unos cigarrillos, el acusado entró y le asestó una puñalada por la espalda a Nieves; que éste empezó a correr por el local buscando la salida y al pararse de frente al acusado éste le dió otra puñalada por el pecho; que el puñal que portaba el acusado era de siete a ocho pulgadas de largo; que entre el acusado y Nieves no mediaron palabras ni altercado de clase alguna. El fiscal presentó además la declaración jurada prestada ante él por el acusado el mismo día del suceso y en la cual, si

bien el acusado dijo que estando él parado en la puerta del cafetín Nieves le había hecho un "aguaje con las manos" y entonces él le tiró con el puñal, admitió que Nieves en ningún momento sacó arma alguna y que él portaba el puñal desde tres días antes "para vengar la muerte de su hermana."(1)

El testigo de la defensa Lucas Ocasio declaró que vió que el acusado y Nieves tuvieron una lucha y peleaban dentro del cafetín y al momento salieron ambos para sus respectivas casas, manifestando Nieves que estaba herido; que no sabe quién hirió a Nieves pero que éste no tenía nada en las manos.

La prueba de cargo, a nuestro juicio, tendió a demostrar que el apelante hirió a Nieves por la espalda y luego le infirió una segunda herida de frente cuando Nieves trataba de huir, sin que hubiera ocurrido lucha o pelea alguna entre ellos. Dicha prueba y además la de la defensa, tendió a demostrar que el apelante mató a Nieves inducido por un impulso de vengar la muerte de su hermana. Toda esta prueba, creída por el jurado es suficiente para sostener el veredicto del jurado el cual, a nuestro juicio, hubiera sido el mismo de no haberse hecho la pregunta impropia del fiscal. No se cometió el primer error imputado.

■ En cuanto al segundo arguye el apelante que el veredicto es contrario a derecho debido a que el artículo 9, inciso 5, del Código Penal de España de 1870(2) está vigente en Puerto Rico a virtud del artículo 560 del Código Penal

---

(1)Al declarar el acusado en el juicio dijo que Cristino Nieves y sus dos hermanos habían dado muerte tres días antes a una hermana del acusado y repitió que él portaba el puñal porque lo perseguían y que mató a Nieves por vengar la muerte de su hermana.

(2)El artículo 9, inciso 5to., del Código Penal de España de 1870 lee así: "Son circunstancias atenuantes:

"5°.—La de haberse ejecutado el hecho en vindicación próxima de una ofensa grave causada al autor, sus ascendientes, descendientes, cónyuge, hermanos, o afines en los mismos grados."

de Puerto Rico(³) de acuerdo con nuestra decisión en el caso de *Torres* v. *Sucesión Córdova,* 31 D.P.R. 897, y que, como consecuencia, el jurado debió rendir un veredicto de asesinato en segundo grado o de homicidio voluntario. No tiene razón.

En primer término lo que resolvimos en el caso de *Torres* v. *Sucesión Córdova,* supra, fué que, de acuerdo con el artículo 560, supra, "Específicamente sólo aquella parte del antiguo Código Penal fué derogada *que se refería a los delitos y no a la responsabilidad civil proveniente de los mismos.*" (Bastardillas nuestras.) Se resolvió, además, que el artículo 123 del Código Penal para Cuba y Puerto Rico(⁴) no ha sido expresamente derogado por el artículo 560, supra, y, como consecuencia, que la acción para reclamar daños y perjuicios por seducción sobrevive al causante de los mismos y puede dirigirse contra sus herederos, por lo menos contra aquellos que aceptan la herencia. Es conveniente hacer constar que, en el caso de *Reyes* v. *Aponte,* 60 D.P.R. 890, rechazamos el *obiter dictum* que contiene el caso de *Torres* v. *Sucesión Córdova,* supra, al efecto de que "para determinar la naturaleza de una responsabilidad civil nacida de un acto punible, debe considerarse el actual Código Penal, así como el origen de la responsabilidad civil en el Código Penal Español" y resolvimos que desde el año 1904 las obligaciones civiles nacidas de los delitos se rigen no por las disposiciones del Código Penal Español sino por las de los artículos 1059 y 2 de los Códigos Civil y de Enjuiciamiento Civil, respectivamente.

(³) El artículo 560 dispone:

"El Código Penal, Reales Decretos, Ordenes y Ordenes Militares vigentes en Puerto Rico, en todo lo que se relacione o refiera a delitos, y que fuesen incompatibles o se opusieren a la presente y todas las demás leyes, órdenes, decretos, y disposiciones incompatibles o contrarias a la misma, quedan por la presente derogados."

(⁴) Este artículo disponía:

"La obligación de restituir, reparar el daño e indemnizar los perjuicios se transmite a los herederos del responsable.

"La acción para repetir la restitución, reparación e indemnización se transmite igualmente a los herederos del perjudicado."

En segundo término, no puede sostenerse que el jurado en el caso de autos, aun cuando se le hubiera instruído expresamente sobre la cuestión aquí planteada por el apelante (cosa que no se hizo) hubiera podido aplicar el artículo 9 en su inciso 5°., supra, sobre atenuantes, y hubiera rendido un veredicto de asesinato en segundo grado, por no existir dicha calificación del delito bajo el sistema español. Así, en el caso de *Pueblo* v. *Reyes,* 12 D.P.R. 61, en el cual el apelante fué acusado en el año 1899 de un delito de asesinato cometido el 5 de noviembre de 1898 y cuyo juicio se vió ante jurado el 20 de julio de 1906 rindiéndose un veredicto de culpabilidad, se resolvió que:

"El Código Penal antiguo al definir el delito de asesinato en su artículo 414 no admite la calificación de asesinato en 1° y 2° grado que establece el Código Penal vigente en su artículo 201; y por tanto, si Reyes había de ser penado con arreglo al Código antiguo, no puede ser exigible que el jurado que lo declaró culpable, diera cumplimiento al precepto del artículo 284 del Código de Enjuiciamiento Criminal que actualmente rige, pues no había que hacer distinción entre varios grados de culpabilidad al apreciar el delito, y por tanto holgaba determinar el grado del delito cometido."

*No habiéndose cometido los errores alegados procede la confirmación de la sentencia apelada.*