EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MIGUEL MUÑOZ GUZMÁN, acusado y apelante.

Núm. 12503.—*Sometido:* Diciembre 3, 1947. *Resuelto:* Febrero 10, 1948.

*Samuel R. Quiñones,* abogado del apelante; *Hon. Procurador General Luis Negrón Fernández* y *J. Rivera Barreras* y *Alberto Picó Santiago, Fiscal* y *Fiscal Auxiliar,* respectivamente, del Tribunal Supremo, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

La acusación presentada ante la Corte de Distrito de Bayamón contra el aquí apelante Miguel Muñoz Guzmán alega en esencia que durante las horas de la noche de uno de los últimos días del mes de agosto de 1943, y en el barrio Sabana de Guaynabo, el referido acusado ilegal, voluntaria y criminalmente y por medio de la fuerza y la violencia tuvo contacto carnal con Iris Martínez Conde, sin el consentimiento de ésta, la cual allí y entonces no era la propia mujer del acusado, y quien además era menor de catorce años de

edad. Celebrado el juicio correspondiente, el jurado rindió un veredicto condenatorio. Radicó entonces el acusado moción de nuevo juicio y siendo ésta declarada sin lugar la corte dictó sentencia condenándole a sufrir de 1 a 5 años de presidio con trabajos forzados. Apela el acusado tanto de la sentencia condenatoria como de la resolución que declaró sin lugar su moción de nuevo juicio y en el alegato radicado en apoyo de su recurso señala cuatro errores, los que serán discutidos por nosotros en el orden en que aparecen en el mismo.

 Sostiene en primer lugar que ''la corte cometió error con grave perjuicio para el acusado al admitir como parte del *res gestae* la declaración de la madre de la perjudicada.'' De los autos se desprende que para la época en que ocurrieron los hechos imputados al apelante, Iris Martínez Conde, la perjudicada, tenía poco más de 13 años dos meses de edad; que ella era cuñada del acusado Miguel Muñoz Guzmán, por estar éste casado con una hermana suya llamada María Eduvigis; que estando enfermo de algún cuidado un hijo pequeño del acusado la madre de Iris una tarde ordenó a ésta que fuese a casa de María Eduvigis, ya que dada la enfermedad del niño ésta hacía varias noches que no dormía; que Iris así lo hizo, yendo a casa de su hermana al anochecer, donde a su llegada planchó cierta ropa; que como a las diez de la noche frió unas chuletas para el acusado y después se acostó en la cama que había en una pequeña habitación contigua a la cocina; que estando Iris dormida, con la ropa puesta, el acusado se le subió a la cama, en ropas menores, y al despertarse ella éste le tapó la boca con una sábana y le advirtió que como dijera algo la mataría; que ella opuso resistencia, pero que Muñoz venció sus fuerzas, le levantó la falda, le bajó los *panties* y tuvo contacto carnal con ella; que a la mañana siguiente Iris se levantó temprano, quemó en el patio la sábana de su cama, que estaba manchada con sangre, y se fué para la casa de su señora madre antes de que su hermana María Eduvigis

se levantara; que al llegar a la casa de su madre Iris no dijo nada a ésta por temor a las amenazas héchasle por el acusado y que al ver luego la madre que los panties de Iris estaban manchados con sangre y decir ésta a preguntas de la madre que no sabía a qué se debían esas manchas la madre las atribuyó al comienzo de la menstruación de la niña; que algún tiempo después la madre llevó a la niña a ver al Dr. Biascoechea y éste, sin hacerle un examen vaginal, le recomendó que tomara unas capsulitas para aumentar la hemoglobina y que fué allá para el 4 de junio de 1944 y en ocasión en que la esposa del acusado visitaba a la madre de Iris y cuando se separó de Muñoz, que Iris le manifestó a la madre lo que el acusado le había hecho.

También surge de la prueba de cargo que con posterioridad a la supuesta violación el acusado visitaba casi semanalmente la casa de los padres de Iris y que en todas las ocasiones que la veía le abría los ojos como para amenazarla y al hablarle le decía que como ella relatara lo ocurrido él la mataría a ella y a sus padres; y que ante el temor de esa amenaza ella guardó silencio hasta que al hacerle lo mismo el acusado a una prima suya, llamada Carmen Delia Reyes, y ver que ésta había "cantado" y el acusado no le había hecho nada, ella optó por relatar lo ocurrido.

La cuestión a determinarse es, por tanto, si lo relatado por Iris Martínez Conde a su señora madre más de nueve meses después de ocurrida la violación debió ser admitido o no en evidencia por la corte inferior. A nuestro juicio la corte de distrito actuó acertadamente al permitir el testimonio de la madre, Enriqueta Conde Martínez, a este respecto. Es cierto que a la mañana siguiente a los hechos, y al preguntar ella a su hija a qué se debían las manchas de sangre en los panties, la hija guardó silencio y que fué tan sólo después de algunos meses que Iris relató lo que el acusado le había hecho. Su silencio, empero, queda explicado por el hecho de que el acusado no solamente la amenazó la noche en que se cometió el delito sino también semanalmente

y que la menor, ante el temor de la realización de esas amenazas, optó por guardar silencio.

Conforme se ha dicho en innumerables ocasiones, para que las manifestaciones de una perjudicada en un caso de violación sean admisibles en evidencia no es necesario que las mismas hayan sido dichas coetánea o contemporáneamente con los hechos. El factor tiempo no desempeña papel decisivo. Lo que sí es importante es que las manifestaciones sean espontáneas. A este respecto, en el caso de *Pueblo* v. *Fuentes,* 63 D.P.R. 44, 47, dijimos que la aplicación de la regla "con mayor o menor rigidez depende de las circunstancias especiales de cada caso. Cuando, como en el caso de autos, la ofendida es una niña de solamente trece años de edad, legalmente incapaz para consentir el acto carnal realizado sobre su persona, y su silencio durante los cinco días siguientes es la consecuencia directa del miedo producido en su ánimo por las amenazas del autor del ultraje, el relato hecho por ella a la madre al enterarse ésta por el descubrimiento de las manchas de sangre que algo anormal le había ocurrido a la niña, es legalmente admisible." En el presente caso el período transcurrido no es tan corto como lo fué en el de Fuentes. Por el contrario, es mucho mayor, pero tomando en consideración que al igual que en aquél, se trataba de una niña de tierna edad y que el acusado la amenazó, no sólo al momento de realizar el acto sí que también semanalmente, y que podría decirse que ella estuvo todo ese tiempo bajo la influencia dominadora del acusado, su prolongado silencio quedó claramente explicado y el tiempo transcurrido bajo esas circunstancias no debe ser óbice para que se aplique en el presente caso la regla que permite que se admitan en evidencia tales manifestaciones. Este principio ha sido en verdad discutido ampliamente por nosotros en tantos casos que nos parece innecesario hacer comentarios ulteriores sobre el mismo. Bastará con citar algunos de ellos, a saber: *Pueblo* v. *González,* 66

D.P.R. 202; *Pueblo* v. *Fuentes,* supra; *Pueblo* v. *Alvarez,* 47 D.P.R. 161; *Pueblo* v. *Blanco,* 40 D.P.R. 130 y *Pueblo* v. *Arenas,* 39 D.P.R. 16. Véanse también Wigmore *on Evidence,* Vol. VI, 3ª. ed., sección 1750, pág. 142 y 44 Am. Jur., sección 86, pág. 956. Además la admisión en evidencia de declaraciones de esa naturaleza descansa en la sana discreción del juez sentenciador y sólo revocaremos cuando se nos convenza de que ha habido un claro abuso de discreción a ese respecto. Los autos del presente caso no demuestran tal abuso. *Pueblo* v. *Calventy,* 34 D.P.R. 390; *Pueblo* v. *González,* supra. No se ha cometido, en su consecuencia, el primer error señalado.

En segundo término sostiene el apelante que la corte inferior "cometió error con grave perjuicio para el acusado al no ordenar la disolución del jurado cuando así le fué solicitado por el acusado al tratar el fiscal de introducir prueba ajena al caso y perjudicial al acusado." Para que se tenga un cuadro claro de la situación, pasamos a copiar los incidentes que dan lugar a este señalamiento. Mientras declaraba la presunta perjudicada Iris Martínez Conde el fiscal preguntó a ésta: "¿En alguna ocasión se lo dijiste tú a tu mamá?" Ella replicó: "Después de los ocho meses se lo dije, porque se supo de otro caso que hizo él con una prima hermana mía." El juez que presidía el juicio inmediatamente y sin que se le hiciera petición al efecto manifestó: "La corte ordena la eliminación de la contestación de la testigo que se refiere a lo que se supo del otro caso e instruye a los señores del jurado que no deben tomar en consideración para nada la contestación de la testigo en lo que respecta a otro caso; que la única prueba que deben tener en cuenta los señores del jurado es la prueba que se refiere a este caso única y exclusivamente." La defensa entonces solicitó de la corte la disolución del jurado, así como que se declarara un *mistrial.* La corte declaró sin lugar la solicitud y el acusado se anotó una excepción. (Tr. Ev. 69.) Inmediatamente después, y mientras el fiscal continuaba el in-

terrogatorio directo de la menor Iris Martínez Conde, surgió' el incidente que pasamos a copiar *verbatim:*

"P. ¿Te recuerdas tú la fecha en que tú le contaste a tu mamá lo que te había sucedido con Miguel Muñoz Guzmán?

"R. Sí, señor. No recuerdo el día que fué, pero fué en junio de 1944.

"P. ¿Entonces niña si lo que te pasó a tí con Miguel Muñoz Guzmán fué en agosto de 1943 tú sabes contar los meses?

"R. Sí, señor.

"P. Vamos a ver si tú puedes contar desde agosto de 1943 hasta junio de 1944. Tú dijiste ocho meses.

"R. Son diez meses. Yo hablaba del otro caso que hacían ocho meses.

"P. ¿Y qué es ese otro caso?

"R. Otra violación que él hizo con una prima mía.

"*Defensa:* Volvemos a solicitar dè la corte que disuelva el jurado.

"*La Corte:* La corte ordena la eliminación de la contestación de la testigo e instruye a· los señores del jurado que no tendrán en cuenta para nada ninguna manifestación respecto a ningún otro caso; que la prueba que deben ustedes tomar en consideraciión es la prueba que se refiere a este caso, única y exclusivamente la de este caso, en que se le·imputa al acusado haber violado a esta niña que se llama Iris Martínez Conde.

"*Defensa:* Solicitamos de la corte que dé un *ruling* sobre el mistrial.

"*La Corte:* Sin lugar.

"*Defensa:* Tomamos excepción nuevamente.

"*Hon. Fiscal:*

"P. Niña no hables de esas cosas que tú has dicho."

(Tr. Ev. 69, 71).

Más tarde, en el contrainterrogatorio, ocurrió lo siguiente:

"P. ¿Y por qué cuando su madre le preguntó al día siguiente de los hechos no se lo dijo, y a los ocho meses fué que se lo dijo?

"R. Porque ya mi hermana se había ido para mi casa y se había separado él de ella.

"P. ¿Ya usted no tenía el mismo temor de antes?

"R. Como él le hizo lo mismo a una prima mía y ella lo dijo, entonces yo también lo dije.

"P. ¿Y usted entonces se lo dijo a su mamá?

"R. Sí, señor." (Tr. Ev. 104, 105.)

La defensa no solicitó nada de la corte, ni se opuso en esta ocasión a las manifestaciones de la perjudicada, a pesar de que ésta lo que hacía era repetir lo que en las ocasiones anteriores ya había dicho.

Continuó el juicio y luego de desfilar toda la prueba de El Pueblo ocupó el propio acusado la silla de los testigos. En el contrainterrogatorio el fiscal preguntó a éste: "¿Quién violó a Iris Martínez Conde?"—y el acusado contesta: "Un hermano de ella . . . El hermano se llama Expedito Martínez . . . Lo ví yo y mi esposa también lo vió. Al preguntar nuevamente el fiscal al acusado "¿y no fué usted quién la violó?", éste contesta—"no fuí yo." Surge de los autos en seguida lo siguiente:

"P. ¿Quién violó a Carmen Delia Reyes?

"R. No contesta.

"Defensa: Volvemos Sr. Juez a la moción de mistrial para que la corte disuelva al jurado; es la tercera vez durante el curso del juicio que el fiscal ha insistido en traer aquí a este caso prueba ajena al caso y perjudicial al acusado.

"La Corte: La corte sostiene la objeción e instruye a los señores del jurado que no deben tener en cuenta para nada esas manifestaciones, sino única y exclusivamente la prueba que se refiere a este caso."

El acusado no se anotó excepción a la anterior resolución de la Corte. El contrainterrogatorio continuó así:

"Hon. Fiscal:

"P. Testigo ¿para el 1943 quién vivía en su casa?

"R. Mi esposa y yo y dos hijitos míos.

"P. ¿Y quién más vivía en su casa en agosto de 1943?

"R. Más nadie.

"P. ¿Nadie más se quedaba a dormir allí en su casa?

"R. Nadie más.

"P. ¿Conoce usted a Carmen Delia Reyes?

"R. Sí señor.

"P. ¿Sabe usted si esa persona que le he nombrado vivía en su casa o fué a vivir a su casa para esa época o para una fecha posterior?

"R. Carmen Delia Reyes vivió en casa veinte y seis días.

"P. ¿Vivía allí?

"R. Ella estuvo en casa viviendo veinte y seis días, Carmen Delia Reyes." (Tr. Ev. 178–179).

Al anterior contrainterrogatorio, el acusado no hizo objeción.

Más tarde, y cuando ya el juicio estaba en sus postrimerías ocurrió lo que copiamos a continuación:

"UN JURADO: ¿Nosotros no tenemos que tomar en cuenta para nada al juzgar este caso que estamos juzgando ahora ninguna manifestación que se haya hecho con relación a otros casos que tenga pendientes el acusado?

"LA CORTE: En absoluto, ya se los dije. Ustedes están juzgando a este acusado por un supuesto delito de violación en la persona de Iris Martínez Conde. Aquí no ha habido prueba, ni se ha intentado presentar prueba de que el acusado haya cometido otro delito, y al acusado se le presume inocente hasta que se le pruebe lo contrario." (Tr. Ev. 190, 191).

Tampoco en esta ocasión el acusado pidió nada de la corte ni se anotó excepción a la resolución por ésta dictada.

Además, los autos demuestran de manera palpable que fué el acusado mismo quien por primera vez y en presencia del jurado, hizo referencia a dos casos de violación seguidos en su contra. Al ser llamado el presente caso para juicio él insistió en que se suspendiera el mismo por no estar en sala su testigo, Dr. Biascoechea. La corte preguntó entonces qué declararía éste, surgiendo inmediatamente el incidente que pasamos a copiar:

"DEFENSA: Generalmente, en términos generales, sobre el examen que le hizo el doctor a las perjudicadas en estos casos, y sobre cierto tratamiento de índole gonocóxico, de enfermedad de gonorrea.

"HON. FISCAL: ¿En cuáles dos casos compañero, si se lo podemos preguntar?

"DEFENSA: En ambos casos. Estamos hablando de ambos casos que están señalados para el día de hoy.

"HON. FISCAL: Con la venia de Vuestro Honor, para llamar la atención que sobre eso no podría declarar el doctor, porque son comunicaciones privilegiadas del paciente.

"DEFENSA: Sobre eso es, señor Juez, que giraría el testimonio del doctor Biascoechea. Además necesitamos los records clínicos en donde constan las visitas de estas personas a la clínica y el tiempo que ellas estuvieron bajo tratamiento allí. Esto es muy esencial para la defensa. . . . . "

La lectura de los incidentes que preceden demostrará que fué el propio acusado quien por primera vez habló ante el jurado de dos casos de violación instados en contra suya; y que inmediatamente que se hizo por la testigo Iris Martínez Conde o por el propio acusado referencia a lo ocurrido con Carmen Delia Reyes la corte advirtió al jurado que aquí se estaba procesando al acusado por la supuesta violación de Iris Martínez Conde, que al acusado se le presumía inocente hasta que se probara lo contrario y que en manera alguna el jurado debía tener en cuenta las manifestaciones que se hubieren hecho respecto a cualquier otro caso. Al actuar en la forma en que lo hizo la corte inferior no cometió error alguno. Podríamos repetir ahora con toda propiedad lo que dijimos en el caso de *Pueblo* v. *Carreras*, 62 D.P.R. 156, 159, a saber:

"Por todo ello, concluímos, de las circunstancias de este caso específico, que la pronta y saludable actuación de la corte subsanó la conducta impropia del fiscal de distrito, y que el acusado no fué por ella suficientemente perjudicado a tal extremo que exija que revoquemos por esta sola razón la sentencia condenatoria."

Véase también sobre este particular el caso de *Pueblo* v. *Ojeda*, 66 D.P.R. 419, 422.

El tercer error señalado es al efecto de que la corte inferior erró "al dictar sentencia sobre la base de un veredicto que no estaba sostenido por la evidencia y no estaba de acuerdo con la ley." En los casos en que interviene el

jurado éste es el juez de los hechos y no debemos intervenir con la apreciación que de la prueba hizo el mismo, a no ser que se nos convenza de que su conclusión es enteramente errónea o de que actuó movido por pasión, prejuicio o parcialidad. La prueba de cargo tendió a demostrar que el acusado violó a Iris Martínez Conde, mientras que la de la defensa fué al efecto de que se trataba de venganza personal de la madre de Iris, debido a que ella consideraba al acusado inferior socialmente a su hija María Eduvigis, habiendo llegado su odio contra él a tal extremo que había logrado separarlo de María Eduvigis. El jurado, sin embargo, dirimió el conflicto existente en la prueba y un examen de la misma nos convence de que su veredicto está sostenido por la que desfiló en el curso del juicio. Véanse *Pueblo* v. *Rivera*, 67 D.P.R. 194, 201; *Pueblo* v. *Millán*, 66 D.P.R. 243, 258. y casos en éstos citados.

■ Al discutir el tercer error el acusado también insiste en que la declaración de la perjudicada no fué corroborada tal cual exige el artículo 250 del Código de Enjuiciamiento Criminal.[1] No estamos de acuerdo. Aquí tenemos no sólo la declaración de la menor perjudicada, Iris Martínez Conde, sí que también el testimonio de su señora madre al efecto de que ella envió a Iris a la casa del acusado a cuidar un hijo de éste la noche en que los hechos ocurrieron, la declaración de la madre respecto a haber visto manchados con sangre los panties de Iris a la mañana siguiente y finalmente las manifestaciones de la madre en relación con lo que Iris le dijo nueve meses más tarde. Todo esto a nuestro juicio constituye suficiente corroboración. *Pueblo* v. *Nieves,* 48 D.P.R. 153, *Pueblo* v. *Vázquez,* 40 D.P.R. 258 y *Pueblo* v. *Munera,* 39 D.P.R. 295.

■ Sobre el cuarto señalamiento apenas es necesario hacer comentarios. En éste se insiste en que "la corte erró

---

[1] "Artículo 250.—En juicio por el delito de . . . . . violación, el acusado no podrá ser declarado convicto por la declaración de la mujer agraviada, a menos que su declaración se corrobore con otras pruebas."

con grave perjuicio para el acusado al denegar la solicitud de nuevo juicio.'' Esa moción estuvo predicada en los mismos fundamentos que han sido señalados ante nos como errores cometidos por la corte inferior. Al discutir este error, el apelante meramente dice que sus fundamentos para sostener el mismo son los indicados en los errores anteriores. Como éstos ya han sido plenamente discutidos por nosotros y resueltos adversamente al acusado, procede igualmente declarar sin lugar este señalamiento.

*No habiéndose cometido por la corte inferior ninguno de los errores anotados, su sentencia debe ser confirmada.*