Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **LUZ M. ACEVEDO VARGAS**<br><br>Apelante<br><br><br>v.<br><br><br>**MUNICIPIO DE SAN JUAN**<br><br>Apelada | KLAN202300314<br><br><br><br>CONSOLIDADO CON: | **APELACION**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>**K PE2005-2912**<br><br>Sobre: Despido Injustificado; Daños y Perjuicios; Discrimen; Represalia |
| **LUZ M. ACEVEDO VARGAS**<br><br>Apelada<br><br><br>v.<br><br><br>**MUNICIPIO DE SAN JUAN**<br><br>Apelante | KLAN202300431 | **APELACION**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>**K PE2005-2912**<br><br>Sobre: Despido Injustificado; Daños y Perjuicios; Discrimen; Represalia |

Panel integrado por su presidenta la jueza Ortiz Flores, la jueza Brignoni Mártir y el juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 25 de septiembre de 2024.

Comparece ante nos, Luz Acevedo Vargas, en adelante, Acevedo Vargas o demandante, solicitando que modifiquemos la *"Sentencia"* notificada el 28 de noviembre de 2022 del Tribunal de Primera Instancia, Sala de San Juan, en adelante, TPI-SJ. Por su parte, comparece el Municipio de San Juan, en adelante, MSJ o demandado, solicitando que revoquemos la misma *"Sentencia".* Mediante el referido dictamen, el Foro Apelado declaró "Ha Lugar" la *"Demanda"* incoada por Acevedo Vargas en contra del MSJ. Al amparo de la Ley de Represalias y la Ley para Garantizar la Igualdad

de Derecho al Empleo, el TPI-SJ impuso al MSJ una condena monetaria, por la cantidad de $85,000.00, sujeto a una doble penalidad estatutaria.

Por estar vinculados entre sí, y recurrir del mismo dictamen, *consolidamos ambos recursos apelativos.*

Conforme a los fundamentos que expondremos a continuación, *confirmamos la "Sentencia" apelada.*

**I.**

La demandante comenzó a trabajar para el MSJ en el año 1992. Para el momento de los hechos que originaron el pleito que nos ocupa, Acevedo Vargas ocupaba el puesto de Directora Médico II en el CDT Arnaldo García del Residencial Luis Llorens Torres.[1] Su jornada laboral consistía en treinta y cinco (35) horas semanales, *en el horario de 7:00am a 3:00pm.*[2] Las evaluaciones durante los años 1998 y 1999 de la ejecutoria de Acevedo Vargas, fueron excelentes, superando "el nivel esperado".[3]

Durante los meses de abril, septiembre y octubre del año 1999, la demandante remitió varias cartas a Fernando Iturrino, quien se desempeñaba en el CDT Arnaldo García como Odontólogo.[4] Mediante las referidas misivas, Acevedo Vargas le hizo varios señalamientos a Fernando Iturrino, referentes a su desempeño en la oficina dental y cumplimiento con el horario laboral. Surge del expediente que la última comunicación suscrita por la demandante al odontólogo fue copiada a, entre otros, Ibrahím Pérez, Director Ejecutivo del Departamento de Salud del Municipio.[5]

Así las cosas, el 6 de octubre de 1999, Fernando Iturrino envió una contestación por escrito a las cartas de Acevedo Vargas.[6] En su

---

[1] Apéndice del recurso, pág. 286.
[2] *Id.* pág. 287.
[3] *Id.* págs. 336-342.
[4] *Id.* págs. 293-296.
[5] *Id.* pág. 295.
[6] *Id.* pág. 297.

misiva, el odontólogo no solo se defiende de los señalamientos de la demandante, sino que le imputa, entre otras cosas, incumplimiento con el horario de su jornada laboral. Fernando Iturrino alegó en su carta que Acevedo Vargas, junto con Lissette Montañez, quien también trabaja para el MSJ en el CDT Arnaldo García, abandona sus labores en el centro, para irse a atender su práctica privada, varias veces a la semana. En su carta, Fernando Iturrino copió también a Ibrahím Pérez. El 7 de octubre de 1999, Acevedo Vargas volvió a escribirle al odontólogo, con copia a Ibrahím Pérez.[7] En esta misiva, la demandante ofreció explicaciones por las alegaciones levantadas por este último.

### A. Procedimiento Interno/Administrativo

El Director Ejecutivo, Ibrahím Pérez, refirió las cartas entre Acevedo Vargas y Fernando Iturrino a la Oficina de Auditoría Interna del MSJ, en adelante, Oficina de Auditoría.[8] Mediante esta carta-referido del 15 de octubre de 1999, se le solicitó a la Oficina de Auditoría que atendiera los señalamientos hechos por ambas partes, y recomendara las acciones correspondientes.

El 25 de octubre de 1999, Acevedo Vargas suscribió una carta dirigida a Ibrahím Pérez.[9] En la misma, le indicó que no pudo asistir a la reunión a la que fue convocada para el 20 de octubre de 1999, tanto ella como Lissette Montañez y Fernando Iturrino. Alegó que era necesario, conforme al debido proceso de ley, que se le diera la oportunidad de expresarse.

Luego de estos eventos, el MSJ comenzó una investigación contra Acevedo Vargas, Lissette Montañez, Fernando Iturrino y el doctor Aníbal Domínguez. Como parte de esa investigación, el MSJ solicitó los servicios de una compañía, llamada Professional

---

[7] Apéndice del recurso, pág. 302.
[8] *Id*. pág. 308.
[9] *Id*. pág. 310.

Bodyguards & Security Services para investigar si Acevedo Vargas, en efecto, atendía su práctica privada en horas laborales del MSJ.[10] De estos esfuerzos surgió que el 17 de diciembre de 1999, esta fue capturada en un video, junto a Lissette Vargas, atendiendo la clínica privada de Acevedo Vargas en el Municipio de Carolina, durante horas laborales. Sin embargo, en el registro de asistencia del día en cuestión, la demandante firmó el mismo, de manera que reflejara que laboró toda su jornada laboral. Además, la demandante fue entrevistada por el auditor Jesús Rivera.

Durante la investigación, la demandante suscribió cuatro (4) cartas adicionales, con relación a Fernando Iturrino y el proceso investigativo en su contra. La primera de estas fue enviada el 29 de noviembre de 1999 a Ibrahím Pérez.[11] En la misma, notificó la continua situación que tuvo con el odontólogo, con relación a su asistencia. El 11 de enero de 2000 envió otra, esta vez a Yolanda Cordero, Directora de Recursos Humanos del MSJ.[12] En la misma, la demandante hizo varios señalamientos relacionados a Jesús Rivera, y la parcialidad y objetividad de la investigación. Solicitó, además, que se le informaran las razones de la investigación, y quienes eran sujetos de esta. También, solicitó que se discutiera con ella el contenido de la misma, pues no hacerlo es una violación al debido proceso de ley. El 8 de febrero de 2000, Acevedo Vargas suscribió otra carta dirigida a Ibrahím Pérez, en la que hizo señalamientos adicionales sobre la conducta insubordinada de Fernando Iturrino. Finalmente, el 14 de marzo de 2000, la demandante le escribió a la alcaldesa de San Juan de aquel momento, Sila María Calderón.[13] En la misma, apuntó cuatro circunstancias de la investigación, en la que ha sido acosada o

---

[10] Apéndice del recurso, pág. 287.
[11] *Id.* pág. 404.
[12] *Id.* pág. 406.
[13] *Id.* pág. 409.

maltratada en el proceso. Producto de la investigación en cuestión, la Oficina de Auditoría preparó el Informe de Intervención AI-00-26, el 2 de junio de 2000.

Surge del expediente ante nos que, tomando en consideración los hallazgos de la investigación, vertidos en el Informe AI-00-26, Yolanda Cordero suscribió cuatro (4) cartas el 21 de junio de 2000, para cada uno de los empleados investigados, en los cuales se les aplicaba la misma sanción: *la intención de destitución.*[14] Incluso, el 28 de junio de 2000, esta misma remitió a la Oficina de Auditoría un "Informe de Intervención AI-00-26", en el que indicó haber informado que su intención era destituir a los tres médicos investigados, y a Lisette Montañez.[15] No obstante, alega el MSJ que las cartas con la intención de destitución no pudieron ser entregadas, por lo que firmó unos duplicados que presumió eran los mismos que originalmente había preparado. Por eso, las cartas que recibieron los investigados, contrario a las cartas del 21 de junio de 2000, *variaban en sus medidas disciplinarias.*

Más adelante, el 24 de julio de 2000, Acevedo Vargas recibió una carta de Yolanda Cordero, con la intención de destituirla.[16] Se le imputó violación al Artículo 9, Sección 9.1 (1) del Reglamento de Personal del Servicio de Carrera del Poder Ejecutivo del Municipio de San Juan, y el Artículo 11.011 (a) (1) de la Ley de Municipios Autónomos. Estos disponen que el empleado debe asistir con regularidad y puntualidad a su jornada laboral. Además, la carta indicó que en el Reglamento de Conducta y Acciones Disciplinarias del Municipio de San Juan un empleado puede ser objeto de medidas disciplinarias cuando comete fraude en su registro de asistencia; se ausenta sin justificación de sus labores o abandona el área de trabajo para atender asuntos no oficiales. Por estas

---

[14] Apéndice del recurso, pág. 414-421.
[15] *Id.* pág. 422.
[16] *Id.* pág. 319.

razones, se le indicó que era intención del MSJ destituirla de su puesto.

A los otros tres (3) empleados se les imputaron las mismas faltas. Sin embargo, Lisette Montañez fue suspendida de empleo y sueldo por treinta (30) días.[17] Por su parte, Fernando Iturrino y Aníbal Domínguez recibieron una reprimenda escrita.[18]

Por estos hechos, Acevedo Vargas solicitó la desestimación de los señalamientos en su contra.[19] Para dilucidar esta controversia, los días 27 de noviembre de 1999 y 19 y 21 de diciembre de 1999, se celebró una vista administrativa ante la Comisión para Ventilar Querellas y Asuntos de Personal del Municipio de San Juan.[20] La Comisionada Pacheco Fontán de la referida Comisión, y quien presidió las vistas, rindió su informe el 30 de enero de 2001.[21] En el mismo, expuso la Comisionada Pacheco Fontán que las infracciones imputadas en contra de la demandante *no conllevaban la destitución como primera sanción.* Por esto, recomendó que se le sancionara a la demandante con una suspensión de empleo y sueldo por quince (15) días.[22]

Sin embargo, el 8 de junio de 2001, el MSJ procedió con la destitución de Acevedo Vargas.[23] En esta carta de destitución, se le imputaron dos faltas adicionales del Reglamento de Conductas y Acciones Disciplinarias del Municipio de San Juan a la demandante. Por entender que no tuvo la oportunidad de defenderse de estas dos (2) nuevas imputaciones, Acevedo Vargas apeló ante la Junta de Apelaciones del Sistema de Administración de Personal (JASP), en

---

[17] Apéndice del recurso, pág. 364.
[18] *Id.* págs. 362 y 366.
[19] *Id.* pág. 374.
[20] *Id.* pág. 320.
[21] *Id.*
[22] *Id.* pág. 374.
[23] *Id.* pág. 315.

adelante, CASP,[24] impugnando su destitución.[25] Luego de varios años, el 28 de julio de 2012, la CASP emitió una *"Resolución"* en la que recomendó se modificara la medida disciplinaria impuesta a la demandante, y se sustituyera por una suspensión de empleo y sueldo por un periodo de quince (15) días, además de reinstalar a Acevedo Vargas al puesto que ocupaba previamente, o se creara un puesto similar.[26] También, ordenó que al MSJ a pagar a la demandante los haberes dejados de percibir, descontando la compensación recibida por servicios prestados en el sector público y/o privado.[27]

### B. Procedimiento Judicial (Federal)

En lo respectivo al campo federal, el 14 de junio de 2002, Acevedo Vargas instó una demanda civil en contra del MSJ, por discrimen político y por razón de sexo. Además, el 21 de febrero de 2003, la demandante presentó ante la Oficina Federal de Igualdad de Oportunidades en el Empleo un cargo contra el MSJ por discrimen, al amparo del Título VII de la Ley de Derechos Civiles del año 1964.[28]  Sin embargo, la aludida oficina archivó los cargos contra la demandada, por estar prescritos.

Más adelante, el 24 de agosto de 2004, la demandante presentó una solicitud de desistimiento.  El próximo día, el Tribunal Federal para el Distrito de Puerto Rico desestimó las causas de acción federales contra el MSJ con perjuicio.

### C. Procedimiento Judicial (Estatal)

El 15 de agosto de 2005, Acevedo Vargas presentó la causa de acción que nos ocupa, una *"Demanda"* contra el MSJ, amparada en

---

[24] Actualmente conocida como la Comisión Apelativa del Servicio Público (CASP).
[25] Apéndice del recurso, pág. 317.
[26] *Id.* pág. 325.
[27] *Id.* pág. 325.
[28] 42 USC 2000e et seq.

varias causas de acción: Despido Injustificado, Daños y Perjuicios, Discrimen por razón de sexo y Represalias.[29] El 13 de enero de 2006, el MSJ presentó su *"Contestación a la Demanda"*.[30]

Un tiempo más tarde, el demandado solicitó la desestimación de la demanda en su contra, a lo que Acevedo Vargas se opuso.[31] El MSJ alegó que las causas de acción al amparo del Artículo 1802 del ahora derogado Código Civil de 1930, supra, ant. sec. 5141; la Ley para Garantizar la Igualdad de Derecho al Empleo, supra; Ley Para Prohibir el Hostigamiento Sexual en el Empleo, supra y la Ley de Represalias, supra, estaban prescritas.[32] Además, arguyó que las causas de acción al amparo de la Ley de Discrimen no aplicaban a los municipios, y que el reclamo por conducto del Título VII de la Ley de Derechos Civiles del 1964 no procedía, por haberse desestimado con perjuicio la misma en el Foro Federal.

En su *"Resolución"* del 28 de julio de 2008, el TPI-SJ desestimó únicamente la causa de acción bajo el Título VII de la Ley de Derechos Civiles del 194, por haber desistido Acevedo Vargas de esta en el Foro Federal.[33] De esta manera, ordenó la continuación de los procesos al amparo de las demás causas de acción, y asignó el día 2 de diciembre de 2008 para la celebración de la Conferencia con Antelación al Juicio. Sin embargo, previo a la vista referida, el Foro Apelado emitió una *"Sentencia Parcial"* notificada el 8 de agosto de 2008, en la que, además de lo anterior, desestimó con perjuicio las causas de acción al amparo de Ley Antidiscrimen de Puerto Rico,

---

[29] Ley Antidiscrimen de Puerto Rico, Ley 100 del 30 de junio de 1959, 29 LPRA 146 et seq.; Código Civil de 1930, 31 LPRA ant. sec. 1 et seq; Ley de Derechos Civiles de 1964, supra; Ley de Derechos Civiles de 1964, supra; Ley para Garantizar la Igualdad de Derecho al Empleo, Ley Núm. 69 de 6 de julio de 1985, 29 LPRA sec. 1321 et seq.; Constitución de Puerto Rico, Art. II; Ley Para Prohibir el Hostigamiento Sexual en el Empleo, Ley Núm. 17 del 22 de abril de 1988, 29 LPRA sec. 155 et seq; Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley 115 de 20 de diciembre de 1991, 29 LPRA sec. 194 et seq.
[30] Apéndice del recurso, pág. 7.
[31] *Id.* págs. 15-16.
[32] *Id.* pág. 15.
[33] *Id.* pág. 15.

supra y Ley Para Prohibir el Hostigamiento Sexual en el Empleo, supra.[34]

Este dictamen parcial del TPI-SJ fue impugnado por Acevedo Vargas ante el Tribunal de Apelaciones de Puerto Rico.[35] En su *"Sentencia"* notificada el 7 de septiembre de 2011, esta Curia modificó el dictamen del Foro Primario, devolviendo los procedimientos al mismo, de manera que se atienda el reclamo de daños y perjuicios de la demandante, por discrimen, violación al derecho de la intimidad y represalias.

Unos meses después, el 28 de noviembre de 2011, el TPI-SJ emitió una *"Sentencia"* paralizando los procedimientos del caso ante sí, hasta tanto el proceso relacionado a la legalidad del despido de Acevedo Vargas sea debidamente adjudicado ante el Foro Administrativo.[36]

Como reseñáramos previamente, en el acápite sobre el proceso administrativo, la CASP emitió una *"Resolución"* en la que reinstaló a Acevedo Vargas al puesto que ocupaba. Inconforme, el MSJ recurrió ante el Tribunal de Apelaciones mediante un recurso de Revisión Administrativa. En su recurso, el demandado planteó, entre otras cosas, que la CASP se equivocó al determinar que había violentado el debido proceso de ley con la destitución de la demandante.[37]

Ahora bien, el 30 de abril de 2013, el Tribunal de Apelaciones de Puerto Rico notificó su *"Sentencia."*[38] En su dictamen, este Tribunal confirmó la determinación del CASP, por entender que Acevedo Vargas no tuvo la oportunidad de contestar y preparar su defensa, ante las dos imputaciones no notificadas, que justificaron su destitución.

---

[34] Apédice de recurso, pág. 23.
[35] *Id.* pág. 25. (KLAN201100637).
[36] *Id.* pág. 44.
[37] *Id.* pág. 377.
[38] *Id.* pág. 372. (KLRA201200799).

Finalmente, luego de varios trámites procesales, el juicio en su fondo se celebró los días 11, 13 y 19 de febrero, 22, 24, 28, 29 y 31 de octubre, 20 de noviembre y 16 de diciembre del año 2019, y los días 22 de enero y 5 y 6 de febrero del año 2020.[39] Así las cosas, el 28 de noviembre de 2022, el TPI-SJ notificó su *"Sentencia"*, que es objeto de esta revisión.[40]

El Foro Apelado razonó que, durante el juicio, la demandante estableció un caso *prima facie* de represalias y discrimen por razón de sexo. El TPI-SJ justipreció que las cartas que escribió la demandante los días 25 de octubre de 1999, 29 de noviembre de 1999 y 8 de febrero de 2000, constituyeron actividades protegidas al amparo de la Ley de Represalias, supra, que luego de consumadas, resultaron en la destitución de esta. También, consideró que los cuatro (4) meses entre la carta del 8 de febrero de 2000 y el resultado adverso, "resulta ser cronológicamente no muy distante".[41] Luego de activar la presunción *iuris tantum* de represalias, el Foro Apelado concluyó que el MSJ no logró rebatirlo. Por otro lado, indicó el TPI-SJ que las faltas resultantes de los hechos del 17 de diciembre de 1999, según el Reglamento de Conducta y Acciones Disciplinarias del Municipio de San Juan, no proveían la destitución como una posible primera sanción. Según el dictamen, estos hechos atacaron exitosamente la justa causa de la medida disciplinaria impuesta por el MSJ. No obstante, el Foro Primario determinó que el MSJ no violentó el derecho a la intimidad de Acevedo Vargas.

Por todo lo cual, declaró "Ha Lugar" la *"Demanda"* presentada el 15 de agosto de 2005 por Acevedo Vargas. Por estos hechos, condenó al MSJ a pagar la cuantía de $35,000.00 – sujeta a la doble penalidad estatutaria – por causa de su violación a la Ley de

---

[39] Apéndice de recurso, págs. 175-260.
[40] *Id.* pág. 121.
[41] *Id.* pág. 157.

Represalias, *supra*. Además, le impuso la cuantía de $50,000.00 – sujeto a la doble penalidad estatutaria – por razón de su violación a la Ley para Garantizar la Igualdad de Derecho al Empleo, *supra*.

El 12 de diciembre de 2022, Acevedo Vargas presentó una *"Solicitud de Enmienda Nunc Pro Tunc"*, para que se enmendara la *"Sentencia"* a los fines de que incluyera la doble penalidad por los salarios dejados de devengar y el pago de 25% en honorarios. Por su parte, el 13 de diciembre de 2022, el MSJ radicó ante el TPI-SJ una *"Moción de Reconsideración y/o Moción Solicitando Determinaciones Adicionales de Hechos y/o de Derecho Conforme a la Regla 43.1 de Procedimiento Civil de Puerto Rico"*.[42]

El 22 de diciembre de 2022, el TPI-SJ ordenó a la demandante a expresarse en un término de veinte (20) días.[43] El 30 de enero de 2023, Acevedo Vargas presentó su *"Oposición a Moción de Reconsideración y Solicitud de Determinaciones Adicionales de Hechos y/o de Derecho"*.[44] Finalmente, el 14 de marzo de 2023, el Foro Apelado declaró "No Ha Lugar" ambas solicitudes post sentencia.[45]

Inconforme con la determinación del Foro Primario, Acevedo Vargas presentó ante nos un recurso de *"Apelación Civil"* el día 13 de abril de 2023. En la misma, le imputa al TPI-SJ los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL TPI AL NO CONCEDER – CONTRARIO A DERECHO – LOS DAÑOS ECONÓMICOS EN LA SENTENCIA AL AMPARO DE LA LEY NÚM. 115 AL HABER CONCLUIDO QUE EL MUNICIPIO VIOLÓ LA LEY DE REPRESALIAS Y RESOLVEREN CORTE ABIERTA QUE ESTABA OBLIGADA A IMPONER LOS SALARIOS DEJADOS DE PERCIBIR Y LA DOBLE PENALIDAD EN LA EVENTUALIDAD QUE EN SU SENTENCIA CONCLUYA QUE EL MUNICIPIO VIOLÓ LA LEY DE REPRESALIAS (LEY 115).

---

[42] Apéndice del recurso, pág. 435.
[43] *Id*. pág. 479.
[44] *Id*. pág. 480.
[45] *Id*. pág. 502.

**SEGUNDO ERROR:** ERRÓ EL TPI AL NO ORDENAR AL MUNICIPIO DE SAN JUAN A SATISFACER EL PAGO DE 25% POR CONCEPTO DE HONORARIOS DE ABOGADO.

Por su parte, el 15 de mayo de 2023, el MSJ presentó su *"Apelación"* a la *"Sentencia"* del TPI-SJ, recaída en su contra. En su recurso, la demandada hace los siguientes señalamientos de error:

**PRIMER ERROR:** ERRÓ EL TPI AL DETERMINAR QUE EL MUNICIPIO DE SAN JUAN INCURRIÓ EN REPRESALIAS.

**SEGUNDO ERROR:** ERRÓ EL TPI AL DETERMINAR QUE EL MUNICIPIO DE SAN JUAN INCURRIÓ EN DISCRIMEN POR RAZÓN DE SEXO.

**TERCER ERROR:** ERRÓ EL TPI AL EXCLUIR EL INFORME DE INTERVENCIÓN AI-00-266, REALIZADO POR LA OFICINA DE AUDITORÍA INTERNA DEL MUNICIPIO DE SAN JUAN Y EN LA CUAL SE BASÓ LA MEDIDA DISCIPLINARIA IMPUESTA A LA DEMANDANTE; LO QUE RESULTÓ EN UN ERROR PERJUDICIAL, POR CUANTO DE DICHO INFORME SURGE LA EXISTENCIA DE RAZONES LEGÍTIMAS Y NO DISCRIMINATORIAS QUE MOTIVARON LAS DETERMINACIONES TOMADAS POR EL MUNICIPIO DE SAN JUAN.

**CUARTO ERROR:** ERRÓ EL TPI EN SU APRECIACIÓN DE LA PRUEBA, TODA VEZ QUE SUS DETERMINACIONES DE HECHOS NO CUMPLIERON CON EL ESTÁNDAR REQUERIDO, SON ERRÓNEAS, ESTÁN INCOMPLETAS Y/O NO ESTÁN SOSTENIDAS EN LA TOTALIDAD DE LA PRUEBA ADMITIDA Y NO CONTROVERTIDA; LO QUE DEMUESTRA QUE EL HONORABLE TRIBUNAL INCURRIÓ EN PASIÓN, PERJUICIO, ERROR MANIFIESTO Y PARCIALIDAD AL SOPESAR LA PRUEBA.

Luego de varios meses de trámites procesales, este Tribunal *consolidó ambos recursos* y recibió el 7 de febrero de 2024 la transcripción de la prueba oral de todos los días de juicio. Con el beneficio de esta prueba documental, los expedientes que obran en autos, los alegatos en oposición y suplementarios de ambas partes, procedemos a resolver.

**II.**

### A. Apelación

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari*. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se

aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.,* 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007).

Sabido es que las determinaciones de hechos y de credibilidad del Foro Primario deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que – de ordinario – se encuentra en mejor posición para aquilatar la prueba testifical. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 779 (2022); *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011); *S.L.G. Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 356 (2009); *Argüello v. Argüello,* 155 DPR 62 (2001); *Pueblo v. Bonilla Romero,* 120 DPR 92, 111 (1987). Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Barreto Nieves et al. v. East Coast,* 2024 TSPR 40, 213 DPR ___ (2024); *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219, (2021).

Lo cierto es que los Foros Apelativos no deben intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad para sustituir por sus propias apreciaciones, las determinaciones del Tribunal de Primera Instancia. *Barreto Nieves et al. v. East Coast,* supra; *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007); *Rolón v. Charlie Car Rental,* 148 DPR 420, 433 (1999). Esto es, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza el Foro Primario. *McConnell Jiménez v. Palau,* 161 DPR 734, 750 (2004).

Sin embargo, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha

reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *W.M.M. P.F.M., et al. v. Colegio et al.,* supra, pág. 903; *Serrano Muñoz v. Auxilio Mutuo,* supra; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín,* supra; *S.L.G. Rivera Carrasquillo v. A.A.A.*, supra, pág. 356.

### B. Ley de Represalias

La Ley de Represalias, supra, es una herramienta estatutaria que provee protección a empleados que ofrecen testimonio, expresión o información de algún tipo, ya sea verbal o escrita, ante un foro legislativo, *administrativo* o judicial en Puerto Rico. *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 668-669 (2017); *Cordero Jiménez v. UPR*, 188 DPR 129, 136 (2013); *Rentas Santiago v. Autogermana, Inc.*, 182 DPR 759, 765 (2011); *S.L.G. Rivera Carrasquillo v. A.A.A.,* supra, pág. 361.

La misma es una legislación de carácter reparador, anclada en la política pública del estado, con respecto a la protección de los derechos de los trabajadores, por lo que su interpretación judicial debe ser liberal y amplia, de *manera que se alcancen los objetivos que la originaron.* De esta manera, se garantiza la mayor protección de los derechos laborales de los trabajadores. En este proceso interpretativo, toda duda en cuanto a su aplicación deberá resolverse a favor del empleado. *Cordero Jiménez v. UPR*, supra, pág. 138.

Esta pieza legislativa no ha sufrido grandes cambios a través de los años, pero al momento de los hechos del caso de marras, el Artículo 2 (a) de la Ley en cuestión disponía que:

> Ningún patrono podrá despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones,

> compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial de Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

Ley de Represalias, supra, sec. 194b.
*Rentas Santiago v. Autogermana, Inc.*, supra.

Posteriormente, durante los años 2014 y 2024, se introdujeron unas enmiendas al precitado Artículo, a los fines de ampliar el alcance protector de la Ley. De esta manera, quedó fijado, no solo en el espíritu del texto, sino en su letra, que la acción protegida de los empleados podrá ampararse en esta Ley en el contexto de procesos internos – no solo cuando se haga ante foros judiciales, legislativos o administrativos. Ley Núm. 169-2014 y Ley Núm. 81-2024.

Ahora bien, el Artículo 2 (c) de la Ley de Represalias, supra, sec. 194b, dispone que el empleado podrá establecer su caso *prima facie*. Para ello, solo tendrá que probar haber incurrido en una actividad protegida por esta Ley, y haber sido despedido subsiguientemente. En el esquema probatorio de este escenario, establece el estatuto que una vez el empleado pruebe su causa de manera *prima facie*, es responsabilidad del patrono establecer que el despido se debió a una razón no discriminatoria. Para prevalecer en su causa de acción, luego de establecido lo anterior, el empleado deberá probar que esta razón fue un pretexto para su despido.

En *Rivera Menéndez v. Action Service*, 185 DPR 431, 445-446 (2012), el Tribunal Supremo resumió lo anterior de la siguiente manera:

> La ley crea una presunción "juris tantum" de violación a ésta a favor del querellante, al disponer que éste establece un caso prima facie una vez prueba que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado en el empleo. Una vez el

querellante establece de forma prima facie su caso, el patrono deberá alegar y fundamentar que tuvo una razón legítima y no discriminatoria para el despido. Ante esto, el empleado aún puede prevalecer si prueba que la razón alegada por el patrono es un simple pretexto para el despido discriminatorio.

Con respecto al primer requisito, el Tribunal Supremo resolvió en *Rivera Prudencio v. Mun. de San Juan,* 170 DPR 149, 164-165 (2007), que cuando un empleado municipal ofrece testimonio o información ante *un foro administrativo municipal*, éste participa de una actividad protegida. Véase, además, *Velázquez Ortiz v. Mun. de Humacao,* supra, págs. 670-671; *Rivera Menéndez v. Action Service,* supra, págs. 445-446; *Feliciano Martes v. Sheraton,* 182 DPR 368, 393 (2011). El segundo requisito requiere que se demuestre que el patrono tomó una acción adversa y que existe un nexo causal entre dicha acción y el ejercicio de la actividad protegida. *Marín v. Fastening Systems, Inc.,* 142 DPR 499, 511 (1997).

Esta relación de causalidad puede establecerse mediante un criterio de proximidad temporal. Esto es, se puede configurar un caso *prima facie* de represalias estableciendo que la acción adversa ocurrió al "poco tiempo" del empleado haber participado en la actividad protegida. *Rivera Menéndez v. Action Service,* supra, pág. 446; *Rentas Santiago v. Autogermana, Inc.*, supra, pág. 767. No obstante, en aquellos casos en que la proximidad temporal no sea el factor más adecuado para establecer una relación de causalidad, el empleado puede recurrir a cualquier otra evidencia que obre en el expediente y que tienda a demostrar la existencia de un nexo causal. *Feliciano Martes v. Sheraton,* supra, pág. 400.

Finalmente, la naturaleza reparadora de esta Ley provee para que el empleado afectado pueda recibir ciertas reparaciones. Cuando se prospere en una causa de acción al amparo de esta Ley, el empleado tendrá derechos a que se le compense por los daños

reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. Además, establece que los daños sufridos y los salarios no devengados, estarán sujetos a una doble cuantía. Artículo 2 (b) de la Ley de Represalias, supra, sec. 194b.

### C. Discrimen por razón de sexo

La Constitución de Puerto Rico consagra la protección contra el discrimen, por *razón de sexo*, entro otros, en su Artículo II, Sección 1. Const. ELA, Tomo I. *Garib Bazain v. Hosp. Aux. Mutuo et al.*, 204 DPR 601, 614 (2020). Estatutariamente, hay varias leyes que establecen protecciones en el empleo contra el discrimen por razón de sexo. Contrario a la Ley Antidiscrimen de Puerto Rico, supra, la Ley para Garantizar la Igualdad de Derecho al Empleo, supra, se aplica a las entidades gubernamentales. A modo de definir los contornos de su extensión, el estatuto en cuestión establece que "el término 'persona' incluye a persona natural o jurídica; a uno o más individuos, sociedades, asociaciones, corporaciones, representantes legales, fideicomisarios, síndicos, *gobiernos, agencias del gobierno*, subdivisiones políticas, uniones obreras, organizaciones no incorporadas". Ley para Garantizar la Igualdad de Derecho al Empleo, supra, sec. 1322. Al respecto, la misma establece como práctica ilegal en el empleo, el que un patrono "suspenda, rehúse emplear o despida" a cualquier empleado por razón de su sexo. Ley para Garantizar la Igualdad de Derecho al Empleo, supra, sec. 1323(1).

El texto de la Ley es claro. Aunque esta pieza legislativa protege al hombre frente a discrimen, su piedra angular es la protección femenina. Ley para Garantizar la Igualdad de Derecho al Empleo, supra, sec. 1321. En su Exposición de Motivos, nuestro Legislador expresó que:

[La] Asamblea Legislativa se propone requerir el estricto cumplimiento del derecho de la mujer a tener igualdad en el empleo y que no se discrimine por razón de su sexo, mediante la aprobación de legislación que reafirme los postulados de la Constitución. Reconocemos que el postulado constitucional tiene que ser respaldado por la actitud de todos los ciudadanos para que se reconozca, se acepte y se practique la verdadera igualdad entre los hombres y las mujeres. El gobierno y todas sus agencias tienen en sus manos la oportunidad de adelantar los postulados que encierra esta ley mediante el ejemplo de su estricto cumplimiento.

Otro postulado constitucional que inspira la creación de esta pieza legislativa es la Sección 7 del Artículo II de la Constitución de Puerto Rico, supra. Esta máxima dispone que a ninguna persona se le negara la igual protección de las leyes. Exposición de Motivos y "Alcance de la Medida" del Proyecto del Senado 130, Diario de Sesiones, 7 de mayo de 1985, pág. 3118.

Por otro lado, es una directriz jurisprudencial que la interpretación de la Ley para Garantizar la Igualdad de Derecho al Empleo, supra, debe ser conforme al espíritu estatutario que encauza la legislación contra el discrimen. *García Pagán v. Shiley Caribbean, Etc.*, 122 DPR 193, 202 (1988).

En su Artículo 3, la Ley en cuestión dispone que será ilegal que un patrono "*por razón de su sexo*, suspenda, rehúse emplear o *despida* cualquier persona, o que de cualquier otra forma discrimine contra una persona, con respecto a su compensación, términos o condiciones de empleo". Ley para Garantizar la Igualdad de Derecho al Empleo, supra, sec. 1323. (Énfasis suplido). En consonancia con esto último, nuestro Alto Foro ha expresado que el discrimen implica un trato desigual que no esté debidamente justificado. *Meléndez v. Asoc. Hosp. del Maestro*, 156 DPR 828, 838 (2002).

Huelga notar que esta última premisa nos señala que el trato desigual podría estar justificado. Lo cierto es que la precitada

disposición constitucional sobre la igual protección de las leyes se ampara en la necesidad de "trato similar para personas *similarmente situadas*". *López v. E.L.A.*, 165 DPR 280, 297 (2005). Es decir, y así lo ha reconocido nuestro Tribunal Supremo, el Estado puede hacer distinciones para cualquier propósito legítimo, observando que no se le imparta un trato desigual a personas que estén similarmente situadas. Id; *Domínguez Castro et al. v. E.L.A.* I, 178 DPR 1, 41 (2010);

Ahora bien, nuestro Alto Foro ha establecido que un empleado puede establecer su causa de acción contra un patrono, de manera *prima facie. López Fantauzzi v. 100% Natural,* 181 DPR 92, 131 (2011). Para ello, debe demostrar que sufrió un acto perjudicial, como lo sería una destitución de puesto, que la misma se realizó sin justa causa y a base de un hecho discriminatorio. Id. No obstante, es importante señalar que nuestro Tribunal Supremo, analizando las diversas legislaciones alrededor del discrimen laboral, estableció que "no todo despido injustificado es discriminatorio", mientras que "todo despido discriminatorio sí es injustificado". *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 387 (2001).

Ahora bien, cuando la carga probatoria recae sobre el patrono, por haberse demostrado un caso de discrimen *prima facie*, este podrá establecer que existió justa causa para su proceder, o que, aunque hubo un despido injustificado, este no fue discriminatorio. *Fantauzzi v. 100% Natural,* supra, pág. 131.

Por ser relevante a la discusión de los errores planteados, nos referimos al Artículo 7 de la Ley para Garantizar la Igualdad de Derecho al Empleo, supra, sec. 1327. El precitado artículo establece que no se considerará una actuación ilegal, bajo el palio de la Ley que nos ocupa:

> [E]l que un patrono aplique diferentes tipos de compensación, o diferentes términos, condiciones o privilegios en el empleo como resultado de un sistema bona

fide de mérito o antigüedad o de un sistema que mide las ganancias en términos de cantidad o calidad de la producción o a empleados que trabajan en diferentes posiciones, siempre y cuando dichas diferencias no sean el resultado de la intención de discriminar por razón del sexo.

Id.

Finalmente, si el patrono no logra establecer que sus acciones no fueron discriminatorias, la Ley en cuestión dispone los siguientes remedios para el empleado discriminado:

> Toda persona, *patrono* y organización obrera según se definen en esta ley, que incurra en cualquiera de las prohibiciones de esta ley:
> (a) incurrirá en responsabilidad civil:
> (1) *por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo*;
> (2) o por una suma no menor de cien (100) dólares ni mayor de mil (1,000) dólares, a discreción del tribunal, si no se pudieren determinar daños pecuniarios;
> (3) el doble de la cantidad de los daños ocasionados si ésta fuere inferior a la suma de cien (100) dólares y,
> [...]
> Ley para Garantizar la Igualdad de Derecho al Empleo, supra, sec. 1341.
> (Énfasis suplido).

### D. Derecho probatorio

Con relación a Puerto Rico, la práctica del derecho probatorio estaba circunscrita a la Ley de Evidencia en el Título XV del Código de Enjuiciamiento Civil, 32 LPRA secs. 1661-1672,[46] la cual se basaba en el Código de Enjuiciamiento Civil de California. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, Ed. SITUM, 2016, pág. 46.

Ahora bien, en nuestro ordenamiento jurídico se promulgó, por primera vez, el primer cuerpo formal de Reglas de Evidencia, las cuales fueron aprobadas por la Asamblea Legislativa, el 18 de junio

---

[46] Estas disposiciones fueron derogadas por las reglas de evidencia actuales.

de 1979. Esta compilación de reglas probatorias estaba mayormente basada en las precitadas reglas federales y el Código de Evidencia de California, del año 1965. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, Ed. SITUM, 2016, pág. 39. Posteriormente, las Reglas de Evidencia del año 1979 fueron derogadas por las actuales Reglas de Evidencia del 1 de enero de 2010, 32 LPRA Ap. VI. Lo cierto es que las reglas de evidencia federales son el modelo principal de las nuestras. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, Ed. SITUM, 2016, pág. 45. Por eso, el desarrollo jurisprudencial a nivel federal es fuente secundaria a nuestro derecho probatorio que interpreta las reglas de evidencia similares, siempre y cuando no sea contrario a las protecciones consagradas en nuestra constitución. Id. *Pueblo v. Serrano Morales*, 201 DPR 454, 462 (2018).

Por ser nuestro sistema de justicia uno de carácter adversativo, las partes que litigan una controversia vienen obligados a recopilar y presentar evidencia ante un juzgador. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño,* supra, pág. 41. A esos fines, el cuerpo normativo precitado indica que "[e]l propósito principal de las reglas es el descubrimiento de la verdad en todos los procedimientos judiciales". Reglas de Evidencia, 32 LPRA Ap. VI, R. 102.

### a. Autenticación prima facie

Para que una prueba pueda ser admisible como evidencia en un procedimiento judicial, debe ser autenticada. El juzgador debe evaluar, entre otras cosas, que la prueba autenticada no sea prueba de referencia, teniendo en esa circunstancia, que evaluar la misma a luz de las reglas de exclusión.

La prueba de referencia es "una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Regla 801(c) de

Evidencia de 2009, 32 LPRA Ap. VI; *Pueblo v. Zeno Torres*, 211 DPR 1, 16-17 (2022). Como regla general, estas declaraciones no son admisibles, salvo que por ley se disponga otra cosa.

El profesor Chiesa Aponte sostiene que la razón que motiva la regla general de exclusión de prueba de referencia es la falta de confianza en la misma, y su dudoso valor probatorio. Esta se distingue de las declaraciones que se hacen en un tribunal, puesto que estas últimas son hechas bajo juramento, frente al juzgador que otorgará credibilidad y está sujeta al contrainterrogatorio de las partes perjudicadas por la declaración. E. L. Chiesa, *Reglas de Evidencia de Puerto Rico*, San Juan, Ed. Publicaciones JTS, 2009, pág. 466.

La Regla 901 de Evidencia de 2009, supra, atiende este requisito de admisibilidad. Sobre el mismo, sostiene el profesor Chiesa Aponte que autenticar una evidencia es establecer que la evidencia es lo que el proponente alega que es. Además, nos dice que "es establecer la mismidad de la evidencia. Sea A lo que la evidencia ofrecida realmente es; sea B lo que el proponente alega que es". Id. pág. 291.

En lo aquí pertinente, la Regla 902 (E) de Evidencia de 2009, supra, establece que ciertas "Copias certificadas de récords y documentos públicos" gozan de una autenticación *prima facie*. La precitada regla describe estos documentos como:

> Copias de un récord oficial, o parte de éste, o de un documento archivado en una oficina pública conforme a disposición de ley o reglamento público, incluyendo compilación de datos en cualquier formato, si están certificadas como correctas por la persona a cargo de su custodia o por la persona autorizada en ley para expedir este tipo de certificación, siempre que la certificación cumpla con los requisitos establecidos en los incisos (b), (c) o (d) de esta regla, o con cualquier ley o reglamento público pertinente.

Por su parte, el inciso 805 (H) de las Reglas de Evidencia de Puerto Rico de 2009, supra, reconoce excepciones a la regla general

de exclusión de prueba de referencia, aunque la persona declarante esté disponible como testigo. Entre estas excepciones se encuentra la de *"Récords e informes públicos".* Entre estos se encuentran las declaraciones o compilaciones de datos de oficinas o agencias gubernamentales que describen las actividades que éstas realizan. Además, incluye los asuntos observados conforme al deber impuesto por ley de informar sobre dichos asuntos. La precitada regla reza de la siguiente manera:

> Cualquier forma de récords, informes, declaraciones o compilaciones de datos de oficinas o agencias gubernamentales que describan: (1) Las actividades que se realizan en dicha oficina o agencia; (2) los asuntos observados conforme al deber impuesto por ley de informar sobre dichos asuntos, excluyendo, sin embargo, en los casos criminales, cualquier asunto observado por oficiales de policía y otro personal del orden público, o (3) en casos o procedimientos civiles y en casos criminales en contra del gobierno, las determinaciones de hecho que surjan de una investigación realizada conforme a la autoridad que confiere la ley. *El informe se excluirá cuando las fuentes de información **u otras circunstancias** inspiren falta de confiabilidad.*

Id. (Énfasis suplido).

En resumen, los documentos públicos que cumplan con la Regla 902 (E) de Evidencia de 2009, supra, pueden ser autenticados de manera *prima facie.* Por su parte, la Regla 805 (H) de Evidencia de 2009, supra, establece que los récords e informes públicos que coincidan con su contenido son considerados una excepción a la prueba de referencia.

Según el profesor Chiesa Aponte, y lo pertinente al caso de marras, el inciso (3) de la Regla 805 (H) de Evidencia de 2009, supra, contempla los informes por investigación, bajo el entendido que los funcionarios públicos gozan de una presunción de confiabilidad. Tanto así, que, al pie del inciso en cuestión, la regla observa una cláusula de excepción. Explica el profesor Chiesa Aponte que esta

última sirve para cuando "la presunción de integridad del funcionario público parezca dudos[a]", el juzgador pueda ampararse en ella para excluir el informe. E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, 1era ed., Ediciones SITUM, 2016, pág. 306.

### b. Prueba acumulativa

La Regla 401 de Evidencia de 2009, supra, define lo que constituye prueba pertinente. En esencia, es aquella la cual se refiere a la que tiene valor probatorio para adjudicar la causa de acción. E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, supra, pág. 72. Por su parte, la Regla 402 que le sigue, dispone que la evidencia pertinente no es admisible cuando se disponga lo contrario por imperativo constitucional, por disposición de ley o por las reglas de derecho probatorio. Advierte el tratadista Chiesa Aponte en la misma obra, que evidencia pertinente es admisible *prima facie*, aunque podría no ser admitida por razón de la aplicación de una regla de exclusión o por la discreción que se le conceda al tribunal para excluir evidencia pertinente a pesar de no haber regla de exclusión aplicable. Id, pág. 73.

Ahora bien, la Regla 403 de Evidencia de 2009, supra, aborda lo relativo a la evidencia que, aunque pertinente, es excluida por fundamentos de perjuicio, confusión o pérdida de tiempo. Dicha regla lee como sigue:

> Evidencia pertinente puede ser excluida cuando su valor probatorio queda sustancialmente superado por cualesquiera de estos factores:
> a. riesgo de causar perjuicio indebido.
> b. riesgo de causar confusión.
> c. riesgo de causar desorientación del jurado (sic).
> d. dilación indebida de los procedimientos.
> e. *innecesaria presentación de prueba acumulativa.*

Id. (Énfasis suplido).

Se ha dicho que la regla citada responde a la imposibilidad de lograr la codificación de todas las posibles reglas de exclusión. E.L.

Chiesa Aponte, *Tratado de Derecho Probatorio; Reglas de Evidencia de Puerto Rico y Federales*, San Juan, Pubs. J.T.S., 1998, Tomo I, pág. 7.

Como regla general, la evidencia pertinente es admisible. Sin embargo, los tribunales ostentan discreción para excluir prueba pertinente si su valor probatorio queda superado por perjuicio, confusión, desorientación en el jurado, dilación indebida de los procedimientos o innecesaria presentación de prueba acumulativa, a tenor con la Regla 403 de Evidencia, supra; *Pueblo v. Santiago Irizarry,* 198 DPR 35, 44 (2017).

Entre los factores a considerar para excluir prueba pertinente por razón de su escaso valor probatorio frente al perjuicio indebido que pueda causar, está que la evidencia constituya prueba acumulativa. Igual que las anteriores Reglas de Evidencia, las actuales no definen el concepto de prueba acumulativa. Sin embargo, el derogado Artículo 378 del Código de Enjuiciamiento Civil, 32 LPRA ant. sec. 1636, caracterizaba la misma como evidencia "adicional del mismo carácter tendente al mismo fin". Por ello se considera prueba acumulativa aquella que se utiliza para establecer un hecho que "ya está suficientemente establecido" dado que "ya se [ha] presentado evidencia tendente a probar" el hecho consumado. *Pueblo* v. *Fuentes,* 63 D.P.R. 44, 49 (1944) y *First Bank of P.R.* v. *Inmob. Nac., Inc.,* 144 D.P.R. 901, 912-913 (1998), respectivamente. En otras palabras, *es aquella prueba que no añade nada nuevo.* El postulado pragmático de la regla referente a la prueba acumulativa es que, en atención a la economía procesal, debe ser excluida la evidencia cuyo valor probatorio, a la luz de toda la prueba admitida, "resulta mínimo frente a su efecto inflamatorio y perjudicial". *Pueblo v. Miró González,* 133 DPR 839, 857 (1993). Véase, además, *Izagas Santos* v. *Family Drug Center,* 182 DPR 463, 483 (2011).

### E. Honorarios de abogado a Municipios

La imposición estatutaria de honorarios de abogado ha sido regulada por las Reglas de Procedimiento Civil que se han legislado. En esencia, los honorarios de abogados son discrecionalmente impuestos por los Tribunales cuando una de las partes actúa con temeridad o frivolidad. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 145 (2022); *Andamios de P.R. v. JPH Contractors, Corp.*, 179 DPR 503, 520 (2010); J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Publicaciones JTS, 2011, T. IV, pág. 1307. Cuando la parte que incurre en esta conducta es el Estado o sus dependencias, la aplicabilidad de los honorarios ha cambiado, y es necesario evaluarlo bajo el palio de legislaciones especiales.

Con respecto a las Reglas de Procedimiento Civil de 1979, su Artículo 44.1 (d) establecía que cualquier parte que haya procedido con temeridad, podría estar sujeta a la imposición de honorarios de abogado. Sin embargo, el Artículo 44.3 (b) de las precitadas reglas, *eximió al Estado y sus municipios*, de la cuantía en concepto de interés legal, cuando procedían de temeridad. Por ello, nuestro Alto Foro en *Colondréz Vélez v. Bairon Vélez*, 114 DPR 833, 843(1983), resolvió que "al eximirse al Estado, *los municipios* y demás entidades y personas allí mencionadas de la imposición de intereses por temeridad en pleitos sobre cobro de dinero y daños y perjuicios, también están exentos de la imposición de honorarios de abogado por temeridad en ese tipo de litigios".

Sin embargo, las actuales Reglas de Procedimiento Civil de 2009, en su Regla 44.1 (d), establecieron lo contrario. La misma reza de la siguiente manera:

> En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, ***excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.***

(Énfasis suplido).

Es decir, los municipios sí pueden estar sujetos a la imposición de honorarios de abogado cuando procedan en los litigios con temeridad o frivolidad. No obstante, si existe alguna legislación especal que disponga expresamente lo contrario, estos pueden ser, entonces, eximidos del pago de honorarios. La legislación aplicable a este tema es el Código Municipal de Puerto Rico, Ley Núm. 107-2020, 21 LPRA sec. 7001 et seq. El referido Código, en su Artículo 1.053 dispone que:

> La sentencia que se dicte contra cualquier municipio de acuerdo con este Capítulo no incluirá, en ningún caso, el pago de intereses por período alguno anterior a la sentencia, ni concederá daños punitivos, ***ni impondrá honorarios de abogados.***

(Énfasis suplido).
Código Municipal de Puerto Rico, supra, sec. 7084.

### III.

Esbozado el derecho correspondiente, nos toca ahora adjudicar las controversias planteadas y consolidadas por ambas partes en el pleito. El tracto administrativo y judicial de la controversia entre Acevedo Vargas y el MSJ ha sido un suplicio procesal que ya amerita descanso. Por ello, hemos repasado meticulosamente ambos expedientes, cada alegato en oposición y suplementario, así como los veintidós (22) días de juicio que transcurrieron en un periodo de casi un (1) año. Luego de así hacerlo, en contraposición a la norma estatutaria y la jurisprudencia que ocupa las controversias, resolvemos ***confirmar*** *la "Sentencia" apelada en su* ***totalidad***.

Por ser el MSJ la parte contra la cual recayó sentencia, nos propusimos evaluar primeramente su recurso. De entender que sus señalamientos ameritaban en efecto, la revocación de la sentencia hubiese resultado innecesario resolver los planteamientos de la

demandante en sus méritos. Sin embargo, por entender que al MSJ *no le asiste razón* en ninguno de los errores que esbozó en su recurso, nos vimos obligados a evaluar los de Acevedo Vargas, a quien, de igual forma, *tampoco le asiste razón.* Veamos.

### A. Apelación del MSJ (KLAN20230431)

En su *primer señalamiento de error*, el demandado plantea que el TPI-SJ se equivocó al determinar que el MSJ incurrió en represalias, en su destitución de la demandante. *No le asiste razón.*

El Foro Apelado determinó que Acevedo Vargas probó su causa de acción al amparo de la Ley de Represalias, supra, de manera *prima facie.* Nos corresponde determinar si en efecto así lo hizo. Como vimos previamente, el promovente de una acción de esta naturaleza debe probar dos cosas para establecer su caso de su faz: (1) incurrir en una actividad protegida, y (2) sufrir algún resultado negativo subsiguiente a esta. Las cartas que envió Acevedo Vargas los días 25 de octubre de 1999, 29 de noviembre de 1999 y 8 de febrero de 2000 fueron consideradas por el TPI-SJ como la actividad protegida al amparo de la Ley de Represalias, supra. El MSJ argumenta en su recurso que esas cartas fueron admitidas parcialmente, y que haberlas considerado, fue un error del TPI-SJ. Esto, ya que, durante el juicio, no pudo confrontar esta prueba. Incluso, expuso que el Foro Primario consideró la totalidad de estas cartas. Nada más cierto de la realidad.

Cuando las cartas son traídas por primera vez el 17 de octubre de 2019, el MSJ se opone porque en su contenido hay prueba de referencia.[47] El TPI-SJ declaró las objeciones *con lugar.* Sin embargo, la representación legal de la demandante explicó que el contenido era irrelevante, ya que no intentaban "probar si la información que contiene el documento es veraz o no es veraz", sino establecer que

---

[47] Transcripción de la prueba oral, 17 de octubre de 2019, pág. 68.

Acevedo Vargas se comunicó mediante carta con su patrono para hacer unos señalamientos, lo cual es una actividad protegida.[48] Incluso, luego de esta explicación, la representación legal del MSJ continuó objetando, pero aclaró que "si lo que ella quiere demostrar es que ella hizo una segunda carta dirigida al director, eso lo puede testificar".[49] Durante el juicio quedó establecido, con la *anuencia de ambas partes*, que estas cartas eran comunicados de la demandante a su patrono para hacer ciertos señalamientos con relación a Iturrino y la investigación en su contra. Acevedo Vargas no entró en lo sustantivo de las mismas.

En su "*Sentencia*", el TPI-SJ expresó que, con relación a las cartas, estas "constituyeron actividades protegidas".[50] No añade más nada. El Foro Apelado no entró en el contenido de ninguna de estas cartas, y se limitó a reconocer que estas constituyeron actividades protegidas, al amparo de la Ley de Represalias, supra.

Por otro lado, el MSJ nos planeta que las cartas en cuestión no pueden ser consideradas acciones protegidas, ya que fueron remitidas posterior al comienzo de la investigación. Además, alega que los hechos del caso se dieron previos a las enmiendas de la Ley del año 2014 que ampliaron el alcance de la misma, de manera que los empleados quedaran protegidos cuando las actuaciones que resultaran consecuencias adversas se hicieran ante foros internos o privados. Además, alega que lo resuelto por nuestro Alto Foro en *Rivera Prudencio v. Mun. de San Juan*, supra, no puede ser aplicado retroactivamente, ya que esta opinión fue publicada unos seis o siete años posteriores a los hechos del caso. *No coincidimos con el demandado.*

El texto *original* de la Ley que nos ocupa se limitó a circunscribir las acciones protegidas a aquellas hechas ante ciertos

---

[48] *Id.* pág. 75.
[49] *Id.* pág. 76.
[50] *Id.* pág. 156.

foros, incluyendo los administrativos. En *Rivera Prudencio v. Mun. de San Juan*, supra, pág. 164, nuestro Alto Foro concluyó que "a la luz del historial legislativo, de las normas de hermenéuticas aplicables y de la más reciente expresión legislativa respecto el alcance de la Ley [de Represalias], esta última *ofrece protección a los empleados municipales*". (Énfasis suplido). Es decir, en un ejercicio de interpretación judicial, el aludido Foro concluyó que en la esfera administrativa que contempla la Ley en cuestión, los empleados públicos (en ese caso y en el de marras, los del municipio de San Juan), están protegidos. Por lo que, cuando se enmienda la Ley de Represalias, supra, en el año 2014, ya nuestro Máximo Foro había extendido con su interpretación, esta protección a empleados como Acevedo Vargas. Nada impedía en derecho que el TPI-SJ, a la luz de *Rivera Prudencio v. Mun. de San Juan*, supra, considerara protegidas las cartas enviadas por la demandante.

Establecido que las cartas de Acevedo Vargas los meses de octubre y noviembre del año 1999 y de febrero del año 2000 son actividades protegidas al amparo de la Ley de Represalias, supra, atendemos el argumento del MSJ con respecto a la temporalidad y nexo causal. Bien lo explica el MSJ en su recurso, cuando indica que "el orden en que ocurren los hechos es fundamental a la causa de acción" bajo la Ley que nos ocupa. Arguye el demandado que por las cartas haberse enviado luego del referido que activó la investigación, que posteriormente culminó en su destitución, la demandante no estableció el nexo causal entre la acción protegida y la acción adversa. Sin embargo, no hay fundamento jurídico que impida que las acciones protegidas – cuando logren establecer nexo causal entre sí y las acciones adversas – puedan activar la Ley de Represalias, supra, por el hecho de haber incurrido en ellas durante, y no previo, a una investigación.

Por otro lado, plantea el MSJ que cuatro (4) meses entre la última carta de Acevedo Vargas y su destitución, es un tiempo muy prolongado para establecer su causa de acción de manera prima facie. Esto, ya que la Ley requiere que la misma ocurra "subsiguiente" a la acción protegida. Sin embargo, la jurisprudencia invocada para ello está mal citada. El término de cuatro (4) meses que señala el MSJ dentro del referido caso, se refiere a que los circuitos federales de apelación "entienden que un espacio de cuatro meses entre ambos eventos no constituye suficiente evidencia indirecta para cumplir con el requisito de causalidad". *Feliciano Martes v. Sheraton*, 182 DPR 368, 398 (2011). Esto, no solo no nos obliga, *tampoco nos convence*. Entendemos que el ejercicio de evaluar la temporalidad entre los actos protegidos y adversos es un ejercicio mejor ejecutado por el juzgador de los hechos.

Por último, el nexo causal puede ser evidenciado a través de otros factores, como lo hizo el TPI-SJ en su *"Sentencia"*. Señaló el dictamen que consideró, además, los siguientes hechos:

1. Acevedo Vargas fue la única empleada destituida, no empece a que las cuatro (4) personas investigadas fueron señaladas por las mismas faltas.
2. Hubo un trato desigual entre las féminas de la investigación y los varones.
3. Inconsistencias apreciadas en uno de los testimonios más significativos del juicio – Yolanda Cordero, Directora de Recursos Humanos.

La acción protegida de Acevedo Vargas se refiere a unas cartas en las que esta se quejó e hizo varios señalamientos de inconsistencias, tanto de la investigación, como de Fernando Iturrino, quien también estaba siendo investigado. Lo cierto es que, aunque ambos estaban siendo investigados por el mismo tipo de imputación, el resultado de la investigación desembocó en la destitución de la demandante y una reprimenda escrita a Fernando Iturrino. Con relación a esto, Yolanda Cordero, quien firmó las

cartas disciplinarias que fueron enviadas a los empleados investigados, testificó durante los días 31 de octubre y 20 de noviembre de 2019 que el MSJ había recomendado originalmente la destitución de todos los empleados. Sin embargo, alegó que por un error oficinesco que no pudo justificar, las cartas de destitución fueron enmendadas. Solo la de Acevedo Vargas sostuvo la destitución. Además, testificó que una asesora legal del MSJ le indicó que no rectificara el error. Independientemente de la credibilidad que el TPI-SJ le haya otorgado a esta parte del testimonio de Yolanda Cordero, lo cierto es que, en efecto, nada hizo el MSJ para rectificar el presunto error.

En su *segundo señalamiento de error*, el demandado plantea que el TPI-SJ se equivocó al determinar que el MSJ discriminó por razón de sexo contra la demandante. *No le asiste razón.*

Como con la Ley de Represalias, supra, el TPI-SJ concluyó que la demandante estableció su causa de acción por discrimen de manera *prima facie*. Para ello, el empleado debe demostrar que: (1) sufrió un acto perjudicial, (2) sin justa causa y (3) a base de un hecho discriminatorio. Acevedo Vargas, quien fue destituida de su puesto, pudo establecer fehacientemente que el mismo se hizo sin justa causa.

Las imputaciones originales para su destitución fueron apeladas ante la CASP, quien recomendó enmendar la medida disciplinaria, para restituirla a su puesto. Sin embargo, el MSJ sostuvo la destitución, añadiendo dos (2) señalamientos adicionales, a los que no le dio oportunidad de confrontar. Que la destitución de Acevedo Vargas fue realizada injustificadamente, y en directa violación al debido proceso de ley, es un hecho que tanto la CASP, como este Foro Apelativo, han ratificado.

Ahora bien, señala el MSJ que, como parte del esquema probatorio de la Ley para Garantizar la Igualdad de Derecho al

Empleo, supra, este puede rebatir la presunción *prima facie* del caso en su contra, si establece que, aunque hubo un despido injustificado, el mismo no fue discriminatorio. Lo cierto es que la evidencia sobre el trato discriminatorio *por razón de sexo* en contra de la demandante es evidente. Veamos.

Como hemos mencionado en varias ocasiones, el MSJ estuvo investigando a cuatro de sus empleados, por señalamientos sobre asistencia. Sin embargo, la compañía Professional Bodyguards & Security Services, contratada por el MSJ, solo persiguió a las mujeres objeto de la investigación. De este esfuerzo, se obtuvo un video del 17 de diciembre de 1999, en el que capturaron a ambas trabajando en la oficina privada de Acevedo Vargas, durante horas laborables.

El 29 de octubre de 2019 el investigador Saúl Acevedo testificó ante el Foro Primario lo siguiente:[51]

> R: La primera tarea fue investigar a la... a la doctora Acevedo.
> P: Okey. Después de que ust... ¿Y qué ocu...? ¿Usted investigó a la doctora Acevedo?
> R: ¿Perdón?
> P: ¿Y usted cumplió con esa tarea?
> R: Sí.
> P: Okey. Antes de entrar en cuanto a esa tarea de investigar a la doctora Acevedo, ¿a qué otra persona usted investigó?
> R: ¿Sobre la compañía... del Municipio de San Juan, a más nadie.
> [...]
> P: Okey. Y la compañía, ¿ese trabajo se lo suministraba quién? ¿Quién contrató a la compañía para ese trabajo suyo?
> R: Bueno, en aquel momento desconocía.
> P: La doctora Acevedo, ¿para quién trabajaba?
> R: Según la información, para el Municipio de San Juan.
> P: Okey. ¿A qué otro empleado del Municipio de San Juan, si alguno, usted investigó?
> R: Ninguno.

---

[51] Transcripción de la prueba oral, 29 de octubre de 2019, págs. 11 (líneas 3-14) y 13 (líneas 2-12).

El investigador no explicó a qué se debió esta disparidad en los sujetos de investigación del MSJ. Este último fue más agresivo en su investigación contra Acevedo Vargas y Lissette Montañez, que con los otros dos empleados varones. Además, la única destituida de su cargo fue la demandante. Los otros dos varones solo recibieron una reprimenda escrita. Por su parte, la otra empleada mujer, Lissette Montañez, aunque no fue destituida, fue suspendida. Es decir, solo las mujeres en la investigación fueron objeto de una investigación más rigurosa, y de las medidas disciplinarias más severas.

El MSJ intenta argüir que podía darle un trato desigual a Acevedo Vargas, por no estar similarmente situada con los demás compañeros. Es decir, por haber sido ella la Directora Médico del CDT Arnaldo García. Para ello, incluso, levanta el Artículo 7 (b) de la Ley para Garantizar la Igualdad de Derecho al Empleo, supra. Alega el MSJ que, a la luz del precitado Artículo, podía imponer distintas condiciones a sus empleados, siempre que las razones no fueran discriminatorias.

Sin embargo, una somera lectura de este inciso nos mueve a pensar que el MSJ, intenta inducir este Foro a error. El referido Artículo atiende las circunstancias en las que un patrono, en el ejercicio de emplear o de establecer las condiciones de un empleo, puede requerir o exigir de su empleomanía cosas distintas. Nada habla sobre las condiciones o términos para el despido o la destitución. Además, al pie del inciso aludido, el Legislador consagra que estas diferencias no pueden ser discriminatorias.

Por otro lado, aun si esta Curia coincidiera con la interpretación que el demandante quiere persuadirnos a adoptar, lo cierto es que las circunstancias alrededor de la suspensión de Lissette Montañez descartan su teoría. Alega el MSJ que podía tratar desigualmente a Acevedo Vargas porque esta era la Directora Médico

del CDT Arnaldo García, y por ello, se justifica una pena más severa. Sin embargo, Fernando Iturrino fue supervisor directo de Lissette Montañez, y esta última tuvo una sanción más severa que él.

Aunque el Estado sí puede dar un trato distinto a las personas, sin que necesariamente sea una violación constitucional o estatutaria, debe asegurarse de hacerlo con personas que no estén similarmente situadas. En el caso de marras, hay tres (3) doctores y una asistente. Todos siendo investigados por las mismas imputaciones. Solo la doctora, con un puesto más alto, pero con menos tiempo de empleo en el CDT Arnaldo García, fue destituida. Los demás, solo recibieron una amonestación escrita. La asistente, recibió una sanción más severa que los otros dos médicos. El único detalle en común entre las personas más perjudicadas de esta investigación es que son mujeres. Estas circunstancias, en conjunto con el manejo de la investigación, el hecho de que el MSJ contrató por servicios profesionales nuevamente a Fernando Iturrino luego de que este renunciara,[52] entre otras cosas, nos mueven a coincidir con el Foro Primario. Entendemos que el MSJ discriminó contra Acevedo Vargas por *razón de sexo*, al investigar y destituirla de su puesto.

Finalmente, ha pesado significativamente en nuestro análisis que Yolanda Cordero, la Directora de Recursos Humanos que firmó la carta de destitución de Acevedo Vargas, admitió que la distribución de sanciones a las personas investigadas fue un error. Producto de esa presunta equivocación, solo la demandante resultó destituida. Además, testificó que recibió instrucciones del MSJ para no rectificar el mismo.

En su *tercer señalamiento de error*, el MSJ indica que el Foro Apelado se equivocó al excluir el Informe AI-00-26 de la evidencia en el juicio. Arguye que esto le causó perjuicio. *No le asiste razón.*

---

[52] Apéndice del recurso, págs. 344-361.

Como vimos previamente, los récords y documentos públicos gozan de autenticidad *prima facie*, por virtud de la Regla 902 (E) de Evidencia de 2009, supra. Si bien es cierto esto, el Informe AI-0026 debía ser considerado admisible por el TPI-SJ para que desfilara como prueba en el juicio.

Por su parte, la Regla 805 (H) de Evidencia de 2009, supra, excluye los récords e informes públicos, como el que aquí nos ocupa, de la regla general de exclusión de prueba de referencia. Sin embargo, dispone, además, que estos pueden ser igualmente excluidos porque las fuentes y circunstancias del mismo no inspiren confianza o gocen de credibilidad. Este Tribunal entiende que las circunstancias dudosas de la investigación contra la demandante, plagada de matices discriminatorios y de represalias, inspiran suficiente desconfianza para entender que el Informe AI-00-26 debió ser excluido.

Por otro lado, también entendemos que su admisión era innecesaria. El Informe AI-00-26 es prueba acumulativa, bajo la Regla 403 (D) de las Reglas de Evidencia de 2009, supra. Los hechos medulares de la investigación recogida en el referido informe fueron discutidos ampliamente a través de varios testigos. Además, el MSJ nunca puso al TPI-SJ ni a esta Curia en posición de evaluar si el contenido no admitido podría cambiar el resultado, ya que no especificó qué pieza de información o evidencia exactamente contenía el mismo que ameritara su admisibilidad. De hecho, ni siquiera en su recurso apelativo, logró apuntalar qué fue lo que faltó del informe, para que el TPI-SJ resolviera en contrario.

**B. Apelación de Acevedo Vargas (KLAN20230314)**

En su *primer señalamiento de error*, la demandante alega que el TPI-SJ se equivocó al no concederle una cuantía por los salarios

dejados de devengar, más la doble penalidad estatutaria, en su *"Sentencia". No le asiste razón.*

La Ley de Represalias, supra, dispone que cuando un promovente logra establecer que fue víctima de represalias por parte de su patrono, tiene derecho a recibir los salarios dejados de devengar, una cuantía por daños y angustias mentales, además de los honorarios. Todo esto, sujeto a la doble penalidad estatutaria.

Acevedo Vargas arguye, que si el Foro Primario concluyó que el MSJ incurrió en represalias en su contra, debió concederle estos remedios provisto por la Ley de Represalias, supra. Sin embargo, en su dictamen, el Foro Apelado solo le concedió una cuantía por daños. Añade que en la vista del día 22 de octubre de 2019, el TPI-SJ se comprometió a conceder los remedio que la Ley en cuestión proveyera, en caso de que recayera sentencia a su favor. Sin embargo, es imperativo considerar el impedimento que el procedimiento apelativo ante el CASP representa.

El TPI-SJ reconoció que en el 2012 se adjudicó una controversia ante ese foro administrativo.[53] De hecho, tomó conocimiento judicial que, en ese momento, se ventilaba el caso SJ2019CV01176, para ejecutar las cuantías concedidas por el CASP a favor de Acevedo Vargas, por concepto de los salarios dejados de devengar.[54]

Es decir, el TPI-SJ no puede concederle a la demandante, por segunda vez, la compensación que ya el CASP le otorgó. Es por eso que en su *"Sentencia"*, el Foro Apelado solo le concede una cuantía por daños económicos. Conforme a lo requerido por la Ley de Represalias, supra, el Foro Apelado sujetó esta cuantía a la doble penalidad estatutaria. Por ello, entendemos que actuó

---

[53] Apéndice del recurso, pág. 318.
[54] Transcripción de la prueba oral, 22 de octubre de 2019, pág. 109.

correctamente el TPI-SJ al conceder solo los daños económicos a favor de Acevedo Vargas.

En su *segundo señalamiento de error*, la demandante plantea que el TPI-SJ se equivocó al no concederle un 25% de honorarios de abogado en su *"Sentencia". No le asiste razón.*

Acevedo Vargas plantea que, al amparo de la Ley de Represalias, supra, es acreedora de honorarios de abogado. Sin embargo, como vimos, la aplicabilidad de honorarios de abogado contra los Municipios varía según las Reglas de Procedimiento Civil que se evalúen. Las derogadas, pero vigentes al momento de los hechos, Reglas del año 1979 originalmente permitieron la imposición de honorarios de abogado contra el Estado y sus municipios. Sin embargo, *Colondréz Vélez v. Bairon Vélez,* supra, estipuló que la exclusión de la imposición de intereses por temeridad a los municipios, en pleitos sobre daños y perjuicios, los eximió también de la imposición de honorarios de abogado.

Sin embargo, las vigentes Reglas del año 2009 establecen textualmente que los municipios pueden estar sujetos a la imposición de honorarios de abogado, siempre que no haya una disposición en Ley que lo prohíba. Según reseñamos previamente, el Código Municipal de Puerto Rico, supra, no permite que los Tribunales incorporen en sus sentencias, bajo ninguna circunstancia, honorarios de abogados contra los municipios. Sea que lo evaluemos bajo el palio de cualquiera de las Reglas de Procedimiento Civil, las que estaban vigentes al momento de los hechos, o las actuales, vigentes al momento de dictar sentencia, actuó correctamente el TPI-SJ al no imponer una cuantía por concepto de honorarios de abogados al MSJ.

**IV.**

En fin, bajo el palio de los esquemas probatorios de la Ley de Represalias y la Ley para Garantizar la Igualdad de Derecho al Empleo que nos ocupa, la demandante probó su caso de manera *prima facie*, pero el demandado no logró establecer que la destitución se debió a justa causa, o que no respondió a razones discriminatorias. Por los fundamentos que anteceden, *confirmamos* la *"Sentencia" apelada por ambas partes en este caso, en su totalidad.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones